Ronghua Guan, Esq. (SBN 333069)
ronghua@dgwllp.com
DGW KRAMER LLP
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
Telephone: (213) 592-1908

Attorneys for Plaintiff
NORTHEAST SECURITIES CO., LTD.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NORTHEAST SECURITIES CO., LTD., a Chinese company,<br><br>Plaintiff,<br><br>v.<br><br>KIEU HOANG, an individual,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT**<br><br>**1. Recognition and Enforcement of a Foreign Money Judgment under California Code of Civil Procedure § 1713, *et seq*.**<br><br>**2. Recognition of the Final Judgment Pursuant to International Comity** |

Plaintiff, Northeast Securities Co., Ltd. ("Plaintiff"), by and through its attorneys, DGW Kramer LLP, brings this complaint for the recognition and enforcement of a final, conclusive, and enforceable foreign country money judgment against Defendant Kieu Hoang ("Hoang" or the "Defendant"), and alleges as follows:

## INTRODUCTION

1. This action is brought pursuant to the Uniform Foreign-Country Money Judgments Recognition Act as codified within California Code of Civil Procedure ("CCP") §§ 1713 *et seq.* (the "UFMJRA"), and to the principles of international comity, for recognition of a final and conclusive foreign country money judgment entered on November 30, 2023, in Plaintiff's favor against the Defendant.

2. The final judgment was entered on November 30, 2023, by the Intermediate People's Court of Changchun Municipality of Jilin Province, of the People's Republic of China ("PRC") and assigned civil verdict no.: (2022) Ji 01 Min Chu No. 3192, in Plaintiff's favor as against the Defendant (the "Final Judgment"). A true and accurate copy of the Final Judgment, and its certified translation into English, are annexed hereto as **Exhibit 1**.

3. The Final Judgment, in the amount of CNY 269,610,685.70, as of November 30, 2023, irrespective of interest and costs, became final, conclusive, and enforceable on May 8, 2024.

4. The Final Judgment is based on the Defendant's failure to repay the outstanding principal and accrued interest pursuant to a revised guaranty agreement between Plaintiff and, *inter alia*, Hoang on August 10, 2018 (the "Guaranty"), whereby Hoang agreed to provide a joint and several guaranty for any outstanding amounts due and owing to Plaintiff by RAAS China Limited ("Borrower") pursuant to a share equity repurchase agreement entered into between Plaintiff and Borrower on April 28, 2016 and separate revised share equity repurchase agreements executed on June 27, 2017, and August 10, 2018 (the "Repurchase Agreements").

//

## THE PARTIES

5. Plaintiff Northeast Securities Co., Ltd., is a corporation organized under the laws of the PRC with its principal place of business located at No. 6666 Shengtai Avenue, Changchun City, Jilin Province, PRC.

6. Defendant Kieu Hoang is an individual who resides in the State of California at 1280 Westwind Circle, Westlake Village, CA 91361.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over the Defendant because he resides and owns property in Ventura County, California, which is located in this District

8. This Court has subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of a foreign state and of a State, respectively. In addition, the amount in controversy exceeds $75,000.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendant resides and owns real property located within this District.

## FACTUAL BACKGROUND

### *The Repurchase Agreements*

10. On April 28, 2016, the Plaintiff and Borrower executed the first equity repurchase agreement whereby it was agreed that Borrower would pledge 31,831,000 shares of a third-party entity Borrower held to obtain a loan of CNY 500,000,000 from Plaintiff, the repurchase interest rate was 7.4%, and the interest would be settled on a quarterly basis. In the event that Borrower breached any part of the agreement liquidated damages would accrue and Plaintiff would have the right to dispose of the pledged securities. The repurchase date was to be July 3, 2017. *See* Exhibit 1, at 3 of English translation.[1]

11. On June 27, 2017, Plaintiff and Borrower entered into a revised equity repurchase agreement. The revised agreement changed the repurchase date to July 3,

[1] The page number references hereinafter refer to the page numbers of the English translation of the exhibit(s), unless otherwise specified.

2018, changed the interest rate to 6.4% per annum, and memorialized a change in the pledged equity to 49,930,000 shares. As before, in the event that Borrower breached any part of the agreement liquidated damages would accrue and Plaintiff would have the right to dispose of the pledged securities. *See id*., at 4.

12. Borrower failed to perform as agreed by the repurchase date of July 3, 2018. Consequently, on August 10, 2018, Plaintiff and Borrower executed a second revised equity repurchase agreement whereby Borrower pledged an additional 23,500,000 shares to Plaintiff (for a total pledged equity of 73,430,000 shares), the repurchase date was moved to January 3, 2019, and the interest rate was changed to 12.8% per annum. Again, in the event that Borrower breached any part of the agreement liquidated damages would accrue and Plaintiff would have the right to dispose of the pledged securities. In addition, the second revised equity repurchase agreement provided that Defendant Hoang, *inter alia*, would be jointly and severally liable for any amounts owed to Plaintiff under the Repurchase Agreements. *Id*.

***The Guaranty***

13. Concurrent with, and to ensure the performance of, the April 28, 2016 repurchase agreement, on April 29, 2016 Plaintiff and Defendant Hoang, as the legal representative of the Borrower, executed a guaranty agreement whereby Hoang agreed to be jointly and severally liable for any amounts owed by Borrower to Plaintiff under the repurchase agreement, including any costs incurred by Plaintiff to enforce its rights. *Id*., at 5.

14. As mentioned above, on August 10, 2018, following the execution of the second revised equity repurchase agreement, Defendant Hoang executed a revised guaranty agreement with the Plaintiff. *Id*., at 5-6.

***Breaches of the Repurchase Agreements and Guaranty***

15. Borrower was able to pay all accrued interest until September 27, 2018. Moreover, Borrower was able to repay CNY 11,000,000 in repurchase principal by the expiration date for the Repurchase Agreements of January 3, 2019, leaving an

outstanding repurchase balance of CNY 489,000,000. No further payments were made to Plaintiff and thus Borrower defaulted and breached the Repurchase Agreements and Defendant defaulted and breached the Guaranty. *Id.*, at 6-8.

***The Initial Judgment and the Offset Received by Plaintiff***

16. Consequently, in January 2019, Plaintiff filed suit in the High People's Court of Jilin Province against the Borrower, *inter alia*, to recover the amounts due and owing pursuant to the Repurchase Agreements. *Id.*, at 2-3.

17. The High People's Court of Jilin Province held a trial whereby the court confirmed Plaintiff's claims and the validity of the Repurchase Agreements pursuant to applicable PRC laws. *See id.*

18. On August 28, 2020, the High People's Court of Jilin Province issued the initial judgment against the Borrower, *inter alia*, which provided that (the "Initial Judgment"):

a. Borrower, within ten days from the effective date of the judgment, pay Plaintiff the outstanding loan principal of CNY 489,000,000 and interest (calculated as of October 8, 2019, the interest is CNY 65,454,577.78; thereafter interest continues to accrue on CNY 489,000,000 at a rate of 12.8% per annum, to the date of actual repayment); and

b. Borrower shall, within ten days of the effective date of the judgment, pay Plaintiff the liquidated damages (calculated as of October 8, 2019, the liquidated damages is CNY 47,250,600; thereafter the liquidated damages continues to accrue on CNY 489,000,000 at a rate of 0.03% per diem, to the date of actual repayment); and

c. Plaintiff shall have priority to the proceeds of the discount, auction, or sale of Borrower's pledged 73,430,000 shares, not to exceed the amounts above; and

d. Borrower shall bear the costs of this action of CNY 3,055,325.89; and

e. If any monetary obligation is not fulfilled within the time limit set out in this judgment, double debt interest shall accrue for the delayed performance period in accordance with PRC law[2].

*Id*., at 3.

19. Plaintiff applied to the High People's Court of Jilin Province for enforcement of the Initial Judgment. *See id*., at 7

20. The High People's Court of Jilin Province entered Enforcement Ruling (2023) Ji Zhi No.1-1 on May 8, 2023, Enforcement Ruling (2023) Ji Zhi No.1-2 on July 12, 2023, and Enforcement Ruling (2023) Ji Zhi No.1-3 on August 28, 2023 (collectively, the "Enforcement Rulings"). *See* Ex. 1, at 7.

21. The Enforcement Rulings provided that the High People's Court of Jilin Province had successfully seized CNY 6,146,091 from totaling CNY 6,087,961 after deducting the enforcement fee of CNY 58,130. *Id*.

22. The Court also attempted to auction the pledged shares held by Borrower, but failed to sell the shares at the auction. Consequently, the shares were valued at CNY 530,164,600 and were transferred to Plaintiff, and the value of the shares was used as an offset to the amounts due under the Initial Judgment. The transfer fee was CNY

[2] "[t]he method of calculating the double interest on debt is as follows: double interest on debt = Debtor's unpaid pecuniary debt determined in an effective legal instrument excluding the ordinary interest on debt * 0.0175% daily * period of delayed performance." Zuigao Renmin Fayuan Guanyu Zhixing Chengxu Zhong Jisuan Yanchi Lüxing Qijian De Zhaiwu Lixi Shiyong Falü Ruogan Wenti De Jieshi (最高人民法院关于执行程序中计算延迟履行期间的债务利息适用法律若干问题的解释) [Interpretation of the Supreme People's Court on Several Issues concerning the Application of Law to the Calculation of Interest on Debt for the Period of Delayed Performance in the Enforcement Procedure] (promulgated by the Supreme People's Court, July 7, 2014, effective August 1, 2014) Article 1, para 3, available at https://law.wkinfo.com.cn/legislation/detail/MTAxMDAxMTEzNzZk?searchId=059ff58be8ed49eebc54c747a3e63442&q=最高人民法院关于执行程序中计算延迟履行期间的债务利息适用法律若干问题的解释&module= (last visited December 24, 2024).

73,430, the stamp duty was CNY 265,082.30, and the enforcement fee was CNY 597,564. After deducting these fees, the shares were worth CNY 529,228,523.70. In total, on or around September 1, 2023, Plaintiff obtained CNY 535,316,484.70 from the Enforcement Rulings (the "Offset"). *Id.*

23. After deducting the Offset from the outstanding principal, accrued interest, fees, and costs that were awarded to Plaintiff in the initial judgment, the amount remaining due and owing to Plaintiff pursuant to the Repurchase Agreements and Guaranty was CNY 269,610,685.70 and the ongoing accrual of interest from September 2, 2023. Finally, after accounting for the Offset, the penalties, calculated from the date of default up to October 8, 2019, were CNY 47,250,600 and going forward from October 9, 2019, the penalties should be based on CNY 489,000,000 at a daily rate of 0.03%, amounting to CNY 208,754,100 by September 1, 2023, the date the Offset was received by Plaintiff. *See id.*, at 9.

***The Final Judgment***

24. Following the Enforcement Rulings and the acquisition of the Offset, Plaintiff filed suit against the Defendant in the Intermediate People's Court of Changchun Municipality of Jilin Province to recover the amounts due and owing by Hoang pursuant to the Guaranty he executed. The Intermediate People's Court of Changchun Municipality of Jilin Province accepted the case on October 8, 2022 and served Defendant with the summons and notice of the action. *See* Exhibit 1, at 1.

25. The Intermediate People's Court of Changchun Municipality of Jilin Province held a trial at which Plaintiff appeared and despite having been duly notified of the action and the hearing Defendant failed to appear. *See id.*, at 1 & 3.

26. The Intermediate People's Court of Changchun Municipality of Jilin Province confirmed the factual findings and conclusions from the Initial Judgment and the Enforcement Rulings and confirmed that the Guaranty executed by Defendant was valid and binding pursuant to all applicable PRC laws. Crucially, the Intermediate People's Court of Changchun Municipality of Jilin Province confirmed that, despite

Defendant Hoang's refusal to appear, Plaintiff had communicated with Defendant from December 2019 through February 2022 concerning the Guaranty and the Initial Judgment and that Hoang was aware of his obligations pursuant to the Guaranty. *See id.*, at 3 – 8.

27. The Intermediate People's Court of Changchun Municipality of Jilin Province confirmed that, as of September 1, 2023, the amounts due and owing pursuant to the Repurchase Agreements and Guaranties, accounting for the Offset and including all accrued interests, was CNY 525,615,385.70. *See id.*, at 9.

28. The Final Judgment provided that:

a. Defendant Hoang shall, within ten days of the effective date of this judgment, pay Plaintiff the remaining loan principal of CNY 269,610,685.70 and interest (calculated from September 2, 2023, based on the remaining principal of CNY 269,610,685.70 at a rate of 12.8% per annum to the date of actual payment); and

b. Defendant Hoang shall, within ten days from the effective date of this judgment, , pay Plaintiff the accrued liquidated damages (calculated from the date of default up to October 8, 2019, as CNY 47,250,600; from October 9, 2019, based on CNY 489,000,000 at a daily rate of 0.03%, amounting to CNY 208,754,100 by September 1, 2023; and from September 2, 2023, calculated at a daily rate of 0.03% on the principal of CNY 269,610,685.70 to the date of actual payment); and

c. Defendant Hoang shall repay Plaintiff the costs of this action totaling CNY 4,747,726; and

d. If any monetary obligation is not fulfilled within the time limit set out in this judgment, double debt interest shall accrue for the delayed performance period in accordance with PRC law; and

e. Any party that wishes to appeal the Final Judgment may submit such an appeal within 30 days from the date of service of the Final Judgment to the High People's Court of Jilin Province.

*See id*.

29. The Final Judgment, by confirming the Plaintiff's claims, grants the Plaintiff: (1) the remaining principal balance of CNY 269,610,685.70; and (2) accrued interest from based on the remaining principal balance of CNY 269,610,685.70 from September 2, 2023, calculated at rate of 12.8% *per annum* to the date of actual payment; and (3) accrued liquidated damages calculated until September 1, 2023 of CNY 256,004,700; and (4) continued accrual of liquidated damages based on the outstanding unpaid loan principal of CNY 269,610,685.70 from September 2, 2023, calculated at a daily rate of 0.03% to the date of actual payment; and (5) costs and expenses of the litigation totaling CNY 4,747,726, and (6) accrual of statutory default interest on delayed performance period. *See id*.

30. Defendant Hoang was served with the Final Judgment on or about April 7, 2024 and did not file an appeal within the time period specified by the Final Judgment, therefore the Final Judgment became final, conclusive, and enforceable as of May 8, 2024[3].

31. By calculation, as of October 24, 2024, the amount due and owing pursuant to the Final Judgment, inclusive of all awarded interest and expenses, and accounting for the Offset, is CNY 611,921,093.04 (USD 85,943,973.74) with interest continuing to accrue on the outstanding principal at the rate of CNY 223,926.65 (USD 31,450.37) *per diem*, from October 25, 2024 onwards.

//

//

---

[3] The Final Judgment became final, conclusive, and enforceable on May 8, 2024, therefore the expiry date for performance is ten (10) days from the effective date of the verdict, which is May 18, 2024. *See id*.

## FIRST CLAIM FOR RELIEF

**(Recognition of Foreign Money Judgment under California Code of Civil Procedure § 1713, *et seq.*)**

32. Plaintiff reaffirms, realleges, and incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

33. The Final Judgment attached as Exhibit 1 is entitled to recognition under the Uniform Foreign Country Money Judgments Recognition Act as codified within the state of California under California Code of Civil Procedure Section 1713, *et seq*.

34. The UFMJRA applies to any foreign-country money judgment to the extent that it both "(1) [g]rants or denies recovery of a sum of money[; and] (2) [u]nder the law of the foreign country where rendered, is final, conclusive, and enforceable." CCP § 1715(a).

35. The purpose of the UFMJRA is "to codify the most prevalent common law rules for recognizing foreign money judgments and thereby encourage the reciprocal recognition of United States judgments in other countries." *Manco Contracting Co. (W.W.L.) v. Bezdikian*, 45 Cal. 4th 192, 198 (2008).

36. The party seeking recognition and enforcement of a foreign money judgment bears the initial burden of establishing that the judgment is in fact entitled to recognition and enforcement. *See* CCP § 1715(c). This burden requires that party to demonstrate that the judgment at issue grants the recovery of a sum of money and is final, conclusive, and enforceable under the laws of the issuing foreign country. Moreover, the burden requires the party to also demonstrate that the judgment at issue is not for taxes, penalties, fines, or a judgment for divorce, support, maintenance, or other domestic obligations. *See Ohno v. Yasuma*, 723 F.3d 984, 991 (9th Cir. 2013) (discussing scope of UFMJRA burdens on party seeking recognition and on party resisting same), *and* CCP §§ 1715(c) and 1716(e). The Final Judgment pertains to the repayment of money under commercial contracts and is final, conclusive, and

enforceable under the laws of the People's Republic of China. Therefore, the Final Judgment is entitled to recognition and enforcement under the UFMJRA.

37. The UFMJRA provides for three (3) mandatory bases which require courts to refuse to recognize a foreign judgment, (1) where the foreign judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law, or (2) where the foreign court did not have personal jurisdiction over the defendant, or (3) where the foreign court lacked subject matter jurisdiction. CCP §§ 1716(b)(1) – (3). None of these factors can be proven by the Defendant in this matter, as the Defendant had notice of lawsuits and the Final Judgment, Defendant was provided with opportunities to be heard, exchange and challenge evidence, cross examine witnesses, and argue facts in his defense, in addition to being informed of his rights to appeal the Final Judgment to a court of second instance. This Court has recognized that the court system of People's Republic of China is one that "provide[s] impartial tribunals or procedures compatible with the requirements of due process of law." *Hubei Gezhouba Sanlian Indus. Co. v. Robinson Helicopter Co.*, No. 2:06-cv-01798-FMC-SSx, 2009 U.S. Dist. LEXIS 62782, at *16 (C.D. Cal. July 21, 2009) (enforcing Chinese money judgment pursuant to the Uniform Foreign Money-Judgments Recognition Act). Defendant did not contend that the foreign court did not have personal jurisdiction or subject matter jurisdiction to enter the Final Judgment. *See generally*, Ex. 1.

38. In addition, the UFMJRA also enumerates nine (9) discretionary grounds for nonrecognition and places the burden of proof for establishing any of these grounds upon the party resisting recognition. *See* CCP §§ 1716(c)(1)(A) – (G) and 1716(d). These grounds include if a defendant did not receive sufficient notice so as to defend the action, if the judgment was obtained through fraud or is otherwise repugnant to the public policy of California, where the judgment conflicts with another final and conclusive judgment, and so forth.

39. In the matter at hand, there is no basis upon which to hold that one of the nine discretionary grounds exist and could therefore bar recognition and enforcement of the Final Judgment in California. The Final Judgment indicates that the Defendant was duly notified of the actions in the PRC that preceded and led to the issuance of the Final Judgment. *See* Ex. 1, at 1 & 3. In addition, the Intermediate People's Court of Changchun Municipality of Jilin Province carefully considered the parties' respective positions, facts, and arguments. *See generally*, Ex. 1. Moreover, the Intermediate People's Court of Changchun Municipality of Jilin Province construed the contracts involved in this case and determined they were all legitimate and valid expressions of the parties' true intentions. *See id*. Consequently, the Intermediate People's Court of Changchun Municipality of Jilin Province ruled against the Defendant. *See id*. Finally, the Defendant was provided with notice of his rights, and an opportunity to appeal the Final Judgment. *See id*.

40. As noted above, to the extent that the Final Judgment contains any element(s) not permitted by California law or the UFMJRA, the Plaintiff will expressly exclude such element(s) from any recognized judgment issued by this Court.

**SECOND CLAIM FOR RELIEF**

**(Recognition of the Final Judgment Pursuant to International Comity)**

41. Plaintiff reaffirms, realleges, and incorporates by reference paragraphs 1 through 40 above as if fully set forth herein.

42. The Court has authority to recognize foreign judgments even in circumstances where those judgments are not within the scope of the UFMJRA. Cal. Code Civ. P. § 1723.

43. The Final Judgment is entitled to recognition and enforcement in the State of California pursuant to the traditional principles of international comity as same is understood and applied by the courts of the United States and the State of California.

//

//

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendant Kieu HOANG, as follows:

1. For recognition of the Final Judgment attached hereto as Exhibit 1, including all sums awarded that are consistent with and allowable under California law;
2. Awarding the Plaintiff its reasonable attorney's fees;
3. Awarding the Plaintiff its costs of this suit; and
4. For such other and further relief as this Court deems just and proper.

Dated: March 20, 2025

Respectfully Submitted,
DGW KRAMER LLP

By: /s/Ronghua Guan

Ronghua Guan, Esq. (SBN 333069)
ronghua@dgwllp.com
DGW KRAMER LLP
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
Telephone: (213) 592-1908

*Attorneys for Plaintiff Northeast Securities Co., Ltd.*

# EXHIBIT 1

美国 平件 附 吉林
24007880-8

# 公 证 书

中华人民共和国吉林省长春市国安公证处

# 中华人民共和国吉林省长春市中级人民法院

# 民事判决书

（2022）吉01民初3192号

原告：东北证券股份有限公司，住所中华人民共和国吉林省长春市生态大街6666号。

法定代理人：李福春，董事长。

委托诉讼代理人：李晓丽，北京燕然律师事务所律师。

委托诉讼代理人：刘知会，女，系东北证券股份有限公司工作人员。

被告：HOANG KIEU（黄凯），男，美国国籍，[redacted]日出生，住中华人民共和国香港特别行政区皇后大道东183号合和中心54楼。

原告东北证券股份有限公司与被告HOANG KIEU保证合同纠纷一案，本院于2022年10月8日立案后，依法适用普通程序，公开审理了本案。原告东北证券股份有限公司的委托诉讼代理人李晓丽、刘知会到庭参加诉讼，被告HOANG KIEU（黄凯）经本院依法传唤无正当理由拒不到庭参加诉讼，本案现已缺席审理终结。

东北证券股份有限公司向本院提出诉讼请求：1、判决HOANG

KIEU（黄凯）对（2019）吉民初 4 号《民事判决书》第一项确认的 RAAS CHINA LIMITED（莱士中国有限公司）应向东北证券股份有限公司支付的融资本金人民币 4.89 亿元及利息承担连带清偿责任（至 2019 年 10 月 8 日利息为人民币 65454577.78 元，此后以人民币 4.89 亿元为基数，按年利率 12.8％标准计算至实际给付之日止，截至 2022 年 9 月 1 日利息合计 249579377.78 元）；2、判决 HOANG KIEU（黄凯）对（2019）吉民初 4 号《民事判决书》第二项确认的 RAAS CHINA LIMITED（莱士中国有限公司）应向东北证券股份有限公司支付的违约金承担连带清偿责任（暂计至 2019 年 10 月 8 日为人民币 47250600 元，此后以人民币 4.89 亿元为基数，按日利率 0.03％标准计算至实际给付之日止，截至 2022 年 9 月 1 日违约金合计 202605900 元）；3、本案诉讼费、财产保全费等实现债权的费用由 HOANG KIEU（黄凯）承担。诉讼中变更诉讼请求为：一、HOANG KIEU（黄凯）应向东北证券股份有限公司连带支付剩余未清偿本金 269610685.7 元及利息，利息自 2023 年 9 月 2 日开始计算，以剩余本金 269610685.7 元为基数，按年利率 12.8%的标准计算至实际给付之日；二、HOANG KIEU（黄凯）应向东北证券股份有限公司连带支付违约金，即自违约之日开始计算，计算至 2019 年 10 月 8 日为人民币 47250600 元，自 2019 年 10 月 9 日开始以 4.89 亿为基数，按日 0.03%标准计算，计算至 2023 年 9 月 1 日为 208754100 元，自 2023 年 9

月 2 日开始计算按日 0.03%计算，以本金 269610685.7 元为基数，计算至实际给付之日。事实和理由：RAAS CHINA LIMITED（莱士中国有限公司）（以下称“融资方”）系上市公司上海莱士血液制品股份有限公司（股票名称：上海莱士，股票代码：002252）股东，HOANG KIEU（黄凯）是融资方法定代表人。2016 年 4 月，融资方与东北证券股份有限公司签署了《东北证券股份有限公司股 1 票质押式回购交易业务协议》以及《东北证券股份有限公司股票质押式回购交易初始交易协议书》，融资方以其持有的 3183.1 万股上海莱士股票（股票代码：002252）提供质押向东北证券股份有限公司融入资金 5 亿元（后经上市公司送股、原告对被质押股票部分解质押、融资方补充质押等交易，被质押股票数量现已变更为 7343 万股）。HOANG KIEU（黄凯）以及上海凯吉进出口有限公司（下称“上海凯吉”）与东北证券股份有限公司签订《保证合同》，为该股票质押式回购交易项下全部债务提供连带责任保证担保，该《保证合同》并经公证处进行公证。后融资方违约，东北证券股份有限公司于 2018 年 7 月向吉林省高级人民法院提起诉讼，要求融资方、HOAN GKIEU（黄凯）以及上海凯吉履行还款义务。起诉后经各方协商，于 2018 年 8 月 10 签署了《东北证券股份有限公司股票质押式回购交易业务补充协议暨和解协议书》，约定融资方以其持有的上海莱士股票 2350 万股提供补充质押；深圳莱士凯吉投资咨询有限公司（下称“深圳莱士”）

加入对该笔融资款本金、利息及违约金的支付；科瑞集团有限公司（下称“科瑞集团”）对该笔债务提供连带责任保证，各方签署了《保证合同》，后东北证券股份有限公司撤诉。和解协议书签署后，融资方以及各担保方仅偿还了1100万元融资本金，再次违约，东北证券股份有限公司于2019年1月第二次向吉林省高级人民法院提起诉讼，要求融资方以及深圳莱士履行还款义务并支付利息及违约金，HOANG KIEU（黄凯）、上海凯吉、科瑞集团承担连带清偿责任。后因HOANG KIEU（黄凯）为美国公民，为避免涉外送达影响案件进展，东北证券股份有限公司申请对HOANG KIEU（黄凯）撤诉，吉林省高级人民法院于2019年11月20日作出（2019）吉民初4号之三《民事裁定书》，裁定准许东北证券股份有限公司撤回对HOANG KIEU（黄凯）的起诉。2020年8月28日，吉林省高级人民法院作出（2019）吉民初42101号《民事判决书》，“判决如下：一、被告RAAS CHINA LIMITED（莱士中国有限公司）、深圳莱士凯吉投资咨询有限公司应予本判决生效之日起十日内向原告东北证券股份有限公司支付融资本金人民币4.89亿元及利息（暂计至2019年10月8日为人民币65454577.78元，此后以人民币4.89亿元为基数，按年利率12.8%标准，自2019年10月9日起计算至实际给付之日止）；二、被告RAAS CHINA LIMITED（莱士中国有限公司）、深圳莱士凯吉投资咨询有限公司应予本判决生效之日起十日内向原告东

北证券股份有限公司支付违约金(暂计至2019年10月8日为人民币47250600元，此后以人民币4.89亿元为基数，按日利率0.03%标准，自2019年10月9日起计算至实际给付之日止);三、被告上海凯吉进出口有限公司、科瑞集团有限公司对上述第一项、第二项给付义务承担连带清偿责任。上海凯吉进出口有限公司、科瑞集团有限公司承担保证责任后有权向RAAS CHINA LIMITED(莱士中国有限公司)追偿;四、原告东北证券股份有限公司对被告RAASCHINALIMITED(莱士中国有限公司)所有并质押的7343万股“上海莱士”股票(股票代码:002252)折价或拍卖、变卖后所得价款在本判决第一项、第二项所确定的债权范围内优先受偿;如果未按本判决指定的期间履行给付金钱义务，应当依照《中华人民共和国民事诉讼法》第二百五十三条之规定，加倍支付迟延履行期间的债务利息。案件受理费人民币3050325.89元，保全费人民币5000元，由被告RAASCHINALIMITED(莱士中国有限公司)、深圳莱士凯吉投资咨询有限公司、上海凯吉进出口有限公司、科瑞集团有限公司负担”。一审判决作出后，上海凯吉向最高人民法院提起上诉，后又向人民法院提出撤回上诉申请，最高人民法院于2022年6月24日作出(2021)最高法民终488号《民事裁定书》，“裁定:准许上海凯吉撤回上诉，一审判决自本裁定文书送达之日起发生法律效力”。因被质押股票市值仅约为4亿元，不足以清偿上述全部债务，且HOANG KIEU

（黄凯）已签署《保证合同》自愿为该笔融资提供连带责任保证担保，现向人民法院提起诉讼，请求判决 HOANG KIEU（黄凯）对以上债务承担连带清偿责任。恳请人民法院依法查明事实，支持原告全部诉讼请求。

HOANG KIEU（黄凯）未到庭，亦未答辩。

当事人围绕诉讼请求依法提交了证据，本院组织当事人进行了证据交换和质证。经本院查明事实如下：2019 年 1 月东北证券股份有限公司以 RAAS CHINA LIMITED（莱士中国有限公司）、深圳莱士凯吉投资咨询有限公司、HOANG KIEU（黄凯）、上海凯吉进出口有限公司、科瑞集团有限公司为被告向吉林省高级人民法院提起诉讼。诉讼中，东北证券股份有限公司申请对被告 HOANG KIEU（黄凯）撤诉。2019 年 11 月 20 日吉林省高级人民法院作出（2019）吉民初 4 号之三民事裁定书，准许东北证券股份有限公司撤回对 HOANG KIEU（黄凯）的起诉。

2020 年 8 月 28 日吉林省高级人民法院作出（2019）吉民初 4 号民事判决书，"本院对本案事实认定如下：莱士中国公司（甲方）与东北证券（乙方）于 2016 年 4 月 28 日签订编号为 A160000885《东北证券股份有限公司股票质押式回购交易业务协议书》，次日签订编号为 20160503505058000l《东北证券股份有限公司股票质押式回购交易初始交易协议书》，协议约定：莱士中国公司以其持有'上海莱士'股票（股票代码 002252）3183.1

万股作为质押，向东北证券融入资金5亿元，初始交易日期为2016年5月3日，购回交易日期为2017年7月3日，期限426天，购回利率7.4%，购回交易成交金额543783333.33元。股票质押期结息为每季度结息一次，在季末最后一个月（3月、6月、9月、12月）的第27个自然日前需将利息存入资金账户，如遇法定假日则向后顺延。《东北证券股份有限公司股票质押式回购交易业务协议书》第四十八条约定：‘甲乙双方须严格、全面履行本协议相关条款，任何一方不得违约，否则，除法律规定或本协议约定可以免责意外，违约方应承担违约责任。’第四十九条约定：“发生下列情形之一的，视为甲方违约：......（二）到期回购、提前回购或延期购回时，因甲方原因导致购回交易的证券、资金划付无法完成的；......（五）甲方未按时支付相关利息的......上述情形发生的下一日为违约起始日。”第五十条约定：‘甲方违反本协议第四十九条第（二）、（三）、（四）、（五）、（六）项的，应向乙方支付违约金，乙方可以处置质押的标的证券。违约金=违约金额×违约天数×0.03%。’第五条约定：‘甲方违约时，乙方有权按照协议约定处置相应质押标的证券并优先受偿。另外，协议载明争议解决适用中华人民共和国法律、法规或规则的约束。’

2016年5月3日，莱士中国公司将其持有的3183.1万股‘上海莱士’（股票代码 002252）向东北证券提供质押，东北证券为

质权人。同日，东北证券通过股票交易系统账户向莱士中国公司的账户转入资金5亿元，并经该系统扣除手续费7783.10元，实际转入499992216.90元。2016年9月27日'上海莱士'股票每10股转增8股后质押股票转增为5729.58万股。

2017年6月27日，莱士中国公司与东北证券协商一致，对该笔交易回购项目要素进行变更，又签订编号为20170001204《东北证券股份有限公司股票质押式回购交易业务协议书》、编号为20170628505058000 1《东北证券股份有限公司股票质押式回购交易协议书（二）》，编号为201706285050580002《东北证券股份有限公司股票质押式回购交易协议书（三）》，将购回交易日期由2017年7月3日延期至2018年7月3日，购回年利率变更为6.4%，并解除质押736.58万股，质押股票变更为4993万股。

因莱士中国公司未能在2018年7月3日履行购回义务，东北证券向本院提起诉讼。后于2018年8月10日，莱士中国公司（甲方）、深圳凯吉公司（乙方）、HOANG KIEU（丙方一）、上海凯吉公司（丙方二）、科瑞公司（丙方三）、东北证券（丁方）共同签订编号为20170001204（补）-6《东北证券股份有限公司股票质押式回购交易业务协议补充协议暨和解协议书》。该协议约定：甲方以其持有的'上海莱士'股票2350万股补充质押，将甲方与丁方的股票质押式购回交易期限延期至2019年1月3日，

购回利率变更为年12.8%。2018年7月3日至2019年1月3日期间，甲方于每月20日前向丁方偿还借款本金叁佰万至壹亿元，其中2018年11月20日前偿还欠款本金不应少于壹亿元，2018年12月20日前偿还欠款本金不应少于叁亿元，2019年1月3日前全部债务偿还完毕。如果甲方未按照协议的约定支付本金、利息或发生本协议约定的提前购回情形，视为违约，应当自违约发生之日向丁方支付违约金，违约金=欠款本金×违约天数×0.03%。同时约定，乙方加入甲方上述本金、利息和违约金的支付。丙方一、丙方二确认对甲方在本协议项下的全部债务继续承担连带责任保证，丁方与丙方一、丙方二此前签订的《保证合同》关于权利义务的约定继续有效。丙方三确认对甲方在本协议项下的全部债务承担连带责任保证，并与丁方签订《保证合同》。本协议适用中华人民共和国（不含港、澳、台地区）法律、法规的规定。本协议为原协议的补充协议，本协议与原协议约定不一致的以本协议为准，原协议其他约定继续有效。同日，莱士中国公司与东北证券签订编号为201808105050580002《东北证券股份有限公司股票质押式回购交易协议书（一）》、编号为201808105050580001《东北证券股份有限公司股票质押式回购交易协议书（二）》，对补充质押、延期回购、合同要素变更进行明确，并对补充质押的2350万股‘上海莱士’股票进行质押登记。科瑞公司作为保证人与债权人东北证券签订《保证合同》。截止

2018 年 8 月 10 日，莱士中国公司质押给东北证券‘上海莱士’（股票代码 002252）股票 7343 万股。

另查明，2016 年 4 月 29 日，甲方 HOANG KIEU、上海凯吉公司作为保证人与乙方债权人东北证券签订了编号 SHLS-LSZG-HK《保证合同》，合同约定：为确保莱士中国公司与东北证券签订的编号为 A160000885《东北证券股份有限公司股票质押式回购交易业务协议书》、编号为 20160503505058000l《东北证券股份有限公司股票质押式回购交易初始交易协议书（以下合称“主合同”）履行，甲方愿意为债务人莱士中国公司履行主合同项下的全部支付义务提供保证担保。保证范围为主合同项下的全部债务，包括但不限于全部回购价款以及债务人因违反主合同而产生的违约金，赔偿金、债务人应向乙方支付的其他款项（包括但不限于有关手续费、电讯费、杂费等）、乙方实现债权与担保权利而发生的费用（包括但不限于诉讼费、仲裁费、财产保全费、差旅费、执行费、评估费、拍卖费、公证费、送达费、公告费、律师费等）。保证方式为连带责任保证。保证期间为自本合同生效之日起至主合同项下债务履行期限届满之日后两年止。甲方同意债务展期的，经保证人同意，保证期间至展期协议重新约定的债务履行期限届满之日后两年止。如果乙方与债务人协议变更主合同条款，甲方同意对变更后的主合同项下债务承担连带保证责任，无须另行取得甲方同意。但未经甲方事先同意，乙方与债务人协

议延长债务履行期限或增加债权本金金额的，甲方仅依照本合同的约定对变更前的主合同项下债务承担连带保证责任。如果主合同项下债务到期，债务人未按时足额履行，甲方应在保证范围内立即承担保证责任，无论乙方对主合同项下的债权是否拥有其他担保（包括但不限于保证、抵押、质押、保函、备用信用证等担保方式），不论上述其他担保何时成立，是否有效、乙方是否向其他担保人提出权利主张，也不论是否有第三方同意承担主合同项下的全部或部分债务，也不论其他担保是否由债务人自己所提供，甲方在本合同项下的保证责任均不因此减免，乙方均可直接要求甲方依照本合同约定在其保证范围内承担保证责任。甲方向乙方作出声明与承诺：甲方具备担当保证人的合法资格，甲方签署与履行本合同项下的义务符合法律、行政法规定、规章的规定。双方约定本合同适用中华人民共和国的法律。该《保证合同》于同年5月3日办理了公证。

2018年8月10日，科瑞公司（甲方）作为保证人与债权人东北证券（乙方）签订的《保证合同》约定：为确保莱士中国与东北证券签订的编号为A160000885《东北证券股份有限公司股票质押式回购交易业务协议书》、编号为20160503505058000l《东北证券股份有限公司股票质押式回购交易初始交易协议书》、编号为20170001204《东北证券股份有限公司股票质押式回购交易业务协议书》、编号为20170628505058000l《东北证券股份有

限公司股票质押式回购交易协议书（二）》、《东北证券股份有限公司股票质押式回购交易业务协议补充协议暨和解协议书》（编号为20170001204（补）-6）以及其他相关协议（以上简称“主合同）的履行，甲方为债务人莱士中国公司履行主合同项下的全部债务提供保证担保。保证范围为主合同项下的全部债务，包括但不限于：初始交易价款、全部利息、违约金，赔偿金、提前购回的资金补偿费，因债务人违约给债权人造成的损失及其他款项（包括但不限于有关手续费、电讯费、杂费等）、乙方实现债权与担保权利而发生的全部费用（包括但不限于诉讼费、仲裁费、财产保全费、差旅费、执行费、评估费、拍卖费、公证费、送达费、公告费、律师费等）。保证方式为不可撤销的连带责任保证。保证期间为自本合同生效之日起至主合同项下债务履行期限届满（包括提前购回、延期购回）之日后两年止。主合同项下债务到期，债务人未按时足额履行，乙方无需向债务人提出付款要求或是采取措施强制执行债务人的债务，可直接要求甲方承担保证责任。如主合同项下的债权同时并存多个其他担保（包括但不限于保证、抵押、质押、差额补足及其他任何形式的担保），且乙方减轻或者免除部分担保人的担保责任的（包括该担保物是基于债务人提供的担保物的情况），甲方同意，其担保责任不受影响，继续在其担保范围内承担保证责任。甲方在此明确放弃要求先履行其他担保的抗辩权。甲方向乙方作出声明与承诺：甲方具备担

当保证人的合法资格，甲方签署与履行本合同项下的义务符合法律、行政法规定、规章的规定。如因甲方过错造成本合同无效的，甲方应在保证范围内赔偿乙方全部损失。双方约定本合同适用中华人民共和国的法律。

再查明，深圳凯吉公司作为莱士中国公司的全资子公司，于2017年12月26日偿还前述融资款利息8088888.89元；2018年3月26日偿还利息8000000.00元；于2018年6月26日偿还利息8177777.78元；2018年7月3日偿还利息533333.33元；2018年9月27日偿还利息15233422.22元，截止当日，此前利息已经还清。

莱士中国于2018年8月13日支付融资本金300万元；9月19日支付本金300万元；10月22日支付本金300万元；11月20日支付本金100万元；2019年1月2日支付本金100万元。上述款项均系由深圳凯吉公司账户转入东北证券账户。截止股票购回交易日2019年1月3日莱士中国公司尚欠融资本金4.89亿元。……判决如下：一、被告RAAS CHINA LIMITED（莱士中国有限公司）、深圳莱士凯吉投资咨询有限公司应予本判决生效之日起十日内向原告东北证券股份有限公司支付融资本金人民币4.89亿元及利息（暂计至2019年10月8日为人民币65454577.78元，此后以人民币4.89亿元为基数，按年利率12.8%标准，自2019年10月9日起计算至实际给付之日止）；

二、被告 RAAS CHINA LIMITED（莱士中国有限公司）、深圳莱士凯吉投资咨询有限公司应予本判决生效之日起十日内向原告东北证券股份有限公司支付违约金（暂计至 2019 年 10 月 8 日为人民币 47250600.00 元，此后以人民币 4.89 亿元为基数，按日利率 0.03%标准，自 2019 年 10 月 9 日起计算至实际给付之日止）；三、被告上海凯吉进出口有限公司、科瑞集团有限公司对上述第一项、第二项给付义务承担连带清偿责任。上海凯吉进出口有限公司、科瑞集团有限公司承担保证责任后有权向 RAAS CHINA LIMITED（莱士中国有限公司）追偿；四、原告东北证券股份有限公司对被告 RAAS CHINALIMITED（莱士中国有限公司）所有并质押的 7343 万股'上海莱士'股票（股票代码 002252）折价或拍卖、变卖后所得价款在本判决第一项、第二项所确定的债权范围内优先受偿"。

该判决书作出后，2020 年 9 月 28 日上海凯吉进出口有限公司向最高人民法院提起上诉，后又撤回上诉，2022 年 6 月 24 日最高人民法院作出（2021）最高法民终 488 号民事裁定书。现（2019）吉民初 4 号民事判决书已生效并进入执行程序。吉林省高级人民法院分别于 2023 年 5 月 8 日作出（2023）吉执 1 号之一执行裁定书、2023 年 7 月 12 日作出（2023）吉执 1 号之二执行裁定书、2023 年 8 月 28 日作出（2023）吉执 1 号之三执行裁定书，共扣划上海莱士血液制品股份有限公司股票红利上海凯吉

进出口有限公司、科瑞集团有限公司 6,146,091 元，执行费为 58,130 元，所得执行回款为 6，087，961 元。对质押上海莱士血液制品股份有限公司的股票（证券代码：002252）进行司法拍卖股票流拍后作价 530,164,600 元以物抵债，缴纳过户手续费 73,430 元、印花税 265,082.30 元、执行费 597,564 元，股票作价抵扣各项费用后为 529,228,523.70 元，东北证券股份有限公司以上共取得执行回款 535，316，484.70 元。

2019 年 12 月至 2022 年 2 月，东北证券股份有限公司的工作人员马铎与 HOANG KIEU（黄凯）指定的联系人余剑英 HOANG KIEU（黄凯）通过微信多次沟通进行对账。

本院认为，依据《中华人民共和国涉外民事关系法律适用法》第四十一条规定："当事人可以协议选择合同适用的法律。当事人没有选择的，适用履行义务最能体现该合同特征的一方当事人经常居所地法律或者其他与该合同有最密切联系的法律"。案涉协议中当事人均选择适用中华人民共和国法律处理争议，故本院依法适用中华人民共和国法律作为审理本案的准据法。

关于 HOANG KIEU（黄凯）是否应承担连带保证责任一事。经审查，已生效的（2019）吉民初 4 号民事判决书已经认定，RAAS CHINA LIMITED（莱士中国有限公司）、深圳莱士凯吉投资咨询有限公司应向东北证券股份有限公司支付融资本金、利息及违约金，同时也认定 2016 年 4 月 29 日，HOANG KIEU（黄凯）、上海凯吉

公司作为保证人与乙方债权人东北证券签订编号 SHLS-LSZG-HK《保证合同》合法有效，故本院对上述事实予以确认。根据双方当事人所签订的《东北证券股份有限公司股票质押式回购交易业务协议补充协议暨和解协议书》(编号为 20170001204（补）-6)约定，HOANG KIEU（黄凯）对该协议项下 RAAS CHINA LIMITED（莱士中国有限公司）的全部债务继续承担连带保证责任。因本案纠纷发生在《中华人民共和国民法典》实施以前，故应当适用《中华人民共和国民法典》实施以前的相关法律规定。依据《中华人民共和国担保法》第十八条规定“当事人在保证合同中约定保证人与债务人对债务承担连带责任的，为连带责任保证。连带责任保证的债务人在主合同规定的债务履行期届满没有履行债务的，债权人可以要求债务人履行债务，也可以要求保证人在其保证范围内承担保证责任”。《中华人民共和国物权法》第一百七十六条：“被担保的债权既有物的担保又有人的担保的，债务人不履行到期债务或者发生当事人约定的实现担保物权的情形，债权人应当按照约定实现债权；没有约定或者约定不明确，债务人自己提供物的担保的，债权人应当先就该物的担保实现债权；第三人提供物的担保的，债权人可以就物的担保实现债权，也可以要求保证人承担保证责任。提供担保的第三人承担担保责任后，有权向债务人追偿”。《中华人民共和国担保法》第三十一条规定“保证人承担保证责任后，有权向债务人追偿。”依据上述法律

规定及保证合同约定，东北证券股份有限公司有权直接要求HOANG KIEU（黄凯）依约对RAAS CHINA LIMITED（莱士中国有限公司）应当支付的购回本金、利息及违约金承担连带责任。HOANG KIEU（黄凯）在承担保证责任后，有权向RAAS CHINA LIMITED（莱士中国有限公司）追偿。

关于承担本金、利息及违约金数额一事。依据《最高人民法院关于适用〈中华人民共和国合同法〉若干问题的解释（二）》第二十一条的规定，“债务人除主债务之外还应当支付利息和费用，当其给付不足以清偿全部债务时，并且当事人没有约定的，人民法院应当按照下列顺序抵充：（一）实现债权的有关费用；（二）利息；（三）主债务”。本案中，通过执行程序东北证券股份有限公司已经取得执行回款共计535，316，484.70元，故依据上述法律规定，结合（2019）吉民初4号民事判决书认定的数额及《保证合同》、《和解协议书》等，东北证券股份有限公司主张HOANG KIEU（黄凯）对剩余未清偿本金269610685.7元及利息承担连带保证责任并无不当，利息应自2023年9月2日开始计算，以剩余本金269610685.7元为基数，按年利率12.8%的标准计算至实际给付之日。东北证券股份有限公司主张HOANG KIEU（黄凯）应连带支付违约金，即自违约之日开始计算，计算至2019年10月8日为人民币47250600元，自2019年10月9日开始以4.89亿为基数，按日0.03%标准计算，计算至2023年9

月 1 日为 208754100 元，自 2023 年 9 月 2 日开始计算按日 0.03%计算，以本金 269610685.7 元为基数，计算至实际给付之日，本院予以支持。

综上所述，依照《中华人民共和国合同法》第八条、第六十条、第一百零七条、第一百一十四条第一款、第一百二十六条、第二百零六条、第二百零七条、《中华人民共和国物权法》第一百七十六条、第二百零八条、第二百二十六、第二百二十九条、《中华人民共和国担保法》第十八条、第三十一条、《最高人民法院关于适用〈中华人民共和国合同法〉若干问题的解释（二）》第二十一条、《中华人民共和国涉外民事关系法律适用法》第四十一条、《中华人民共和国民事诉讼法》第一百四十七条之规定，判决如下：

一、被告 HOANG KIEU（黄凯）应于本判决生效之日起十日内对 RAAS CHINA LIMITED（莱士中国有限公司）应向东北证券股份有限公司支付剩余融资本金 269610685.7 元及利息（自 2023 年 9 月 2 日开始计算，以剩余本金 269610685.7 元为基数，按年利率 12.8%的标准计算至实际给付之日）承担连带清偿责任；

二、被告 HOANG KIEU（黄凯）应于本判决生效之日起十日内对 RAAS CHINA LIMITED（莱士中国有限公司）应向东北证券股份有限公司支付违约金（自违约之日开始计算，计算至 2019 年 10 月 8 日为人民币 47250600 元，自 2019 年 10 月 9 日开始以

4.89 亿为基数，按日 0.03%标准计算，计算至 2023 年 9 月 1 日为 208754100 元，自 2023 年 9 月 2 日开始计算按日 0.03%计算，以本金 269610685.7 元为基数，计算至实际给付之日）承担连带清偿责任。

如果未按本判决指定的期间履行给付金钱义务，应当依照《中华人民共和国民事诉讼法》第二百六十条规定，加倍支付迟延履行期间的债务利息。

案件受理费 4747726.00 元，由 HOANG KIEU（黄凯）负担。

如不服本判决，可以在判决书送达之日起三十日内，向本院递交上诉状，并按照对方当事人或者代表人的人数提出副本，上诉于吉林省高级人民法院。

审判长　官平
人民陪审员　郑婷元
人民陪审员　刘洋

吉林省长春市中级人民法院

二〇二[illegible]日

本件与原本核对无异

书记员　王廉贺

# 公 证 书

（2024）吉长国安证外民字第 41410 号

申请人：东北证券股份有限公司，统一社会信用代码：91220000664275090B，住所：长春市生态大街 6666 号。

法定代表人：李福春，男，[redacted]日出生，公民身份号码：[redacted]。

公证事项：民事判决书

兹证明吉林省长春市中级人民法院于 2023 年 11 月 30 日出具的（2022）吉 01 民初 3192 号《民事判决书》的原件与前面的复印件相符，原件属实。

中华人民共和国吉林省长春市国安公证处

公证员 高鑫

2024 年 8 月 19 日

吉林省长春市国安公证处

LI20719401

# The Intermediate People's Court of Changchun City of Jilin Province of The People's Republic of China

## Civil Judgment

(2022) Ji 01 Min Chu No.3192

Plaintiff: Northeast Securities Co., Ltd., residing at No.6666 Shengtai Avenue, Changchun City, Jilin Province, the People's Republic of China.

Legal Representative: LI Fuchun, Chairman of the Board.

Agent *Ad Litem*: LI Xiaoli, Lawyer at Beijing Yanran Law Firm.

Agent *Ad Litem*: LIU Zhihui, female, employee of Northeast Securities Co., Ltd.

Defendant: HOANG KIEU, male, U.S. citizen, born on [redacted], residing at 54th Floor, Hopewell Centre, No.183 Queen's Road East, Hong Kong Special Administrative Region, the People's Republic of China.

Regarding a guarantee contract dispute between Plaintiff Northeast Securities Co., Ltd. and Defendant HOANG KIEU, the case reached this Court's docket on October 8, 2022. This Court publicly tried the case with the ordinary procedure in accordance with the law. The agent *ad litem* of Northeast Securities, LI Xiaoli and LIU Zhihui, appeared and participated in the trial. Defendant HOANG KIEU failed to attend and participate in the trial without a justifiable reason after being lawfully summoned by this Court. This Court tried the case in absentia in accordance with the law. This case has now been concluded after the trial.

Northeast Securities submitted the following claims to this Court: 1. HOANG KIEU shall assume the joint and several liability to pay the loan principal of CNY 489,000,000 and interest (as of October 8, 2019, the interest is CNY 65,454,577.78; thereafter, the interest should be calculated based on CNY 489,000,000 at a rate of 12.8% per annum from October 9, 2019, to the date of actual payment, totaling CNY 249,579,377.78 as of September 1, 2022) to Northeast Securities Co., Ltd. payable by RAAS CHINA LIMITED under Item 1of the "Civil Judgment" (2019) Ji Min Chu No.4; 2. HOANG KIEU shall assume the joint and several liability to pay the penalty (temporarily amasses to CNY 47,250,600 as of October 8, 2019; thereafter, the penalty should be calculated based on CNY 489,000,000 at a rate of 0.03% per day to the date of actual payment, totaling CNY 202,605,900 as of September 1, 2022) to Northeast Securities Co., Ltd. payable by RAAS CHINA LIMITED under Item 2 of the "Civil Judgment" (2019) Ji Min Chu No.4; 3. HOANG KIEU shall bear the costs incurred in the realization of the claim, including litigation costs, property preservation fees, etc. During the trial, the claims were amended to the following: 1. HOANG KIEU shall assume the joint and several liability to pay Northeast Securities Co., Ltd. an outstanding loan principal of CNY 269,610,685.7, and the corresponding interest, with the interest calculated based on a principal of CNY 269,610,685.7, at a rate of 12.8% per annum, from September 2, 2023, to the date of actual payment; 2. HOANG KIEU shall assume a joint and several liability to pay a penalty to Northeast Securities Co., Ltd. with the penalty calculated from the date of default, up to October 8, 2019, as CNY 47,250,600, and thereafter based on a principal of CNY 489,000,000 at a rate of 0.03% per day, totaling CNY 208,754,100 as of September 1, 2023, with further calculation from September 2, 2023, until the

date of actual payment based on a principal of CNY 269,610,685.7. Facts and Reasons: RAAS CHINA LIMITED (hereinafter referred to as the "Financing Party") is a shareholder of the listed company Shanghai RAAS Blood Products Co., Ltd. (Stock Name: Shanghai RAAS, Stock Code: 002252), and HOANG KIEU is the legal representative of the Financing Party. In April 2016, the financing party and Northeast Securities Co., Ltd. signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" and the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement." The financing party pledges 31,831,000 shares of Shanghai RAAS (stock code: 002252) to obtain a loan of CNY 500,000,000 (after subsequent stock distributions by the listed company, partial release of the pledged stocks by Plaintiff, and supplementary pledges by the financing party, the pledged stocks have now changed to 73,430,000 shares). HOANG KIEU and Shanghai KHKMY Import & Export Co., Ltd. (hereinafter referred to as "Shanghai KHKMY") signed the "Guarantee Agreement" with Northeast Securities Co., Ltd., providing a joint and several liability guarantee for all debts under the stock pledge repurchase transaction. The said guarantee agreement was notarized. Thereafter, the financing party defaulted, and Northeast Securities Co., Ltd. filed a lawsuit with the High People's Court of Jilin Province in July 2018, requesting the financing party, HOANG KIEU, and Shanghai KHKMY to fulfill their repayment obligations. After consultations, on August 10, 2018, all parties signed the "Supplementary Agreement and Settlement Agreement to the Stock Pledge Repurchase Transaction," stipulating that the financing party would provide an additional pledge of 23,500,000 shares of Shanghai RAAS, and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. (hereinafter referred to as "Shenzhen RAAS") would join in the payment of the principal, interest, and penalties for the loan. Kerui Group Co., Ltd. (hereinafter referred to as "Kerui Group") provided a joint and several liability guarantee for the debt, and all parties signed the "Guarantee Agreement." Northeast Securities Co., Ltd. subsequently withdrew the lawsuit. After the settlement agreement was signed, the financing party and the guarantors only repaid CNY 11,000,000 of the loan principal and defaulted again. In January 2019, Northeast Securities Co., Ltd. filed a second lawsuit with the High People's Court of Jilin Province, requesting the financing party and Shenzhen RAAS to fulfill their repayment obligations and pay interest and penalties, and for HOANG KIEU, Shanghai KHKMY, and Kerui Group to bear joint and several liability for repayment. Due to HOANG KIEU being a U.S. citizen, to avoid complications with foreign service affecting the case progress, Northeast Securities Co., Ltd. applied to withdraw the lawsuit against HOANG KIEU. On November 20, 2019, the High People's Court of Jilin Province issued Civil Ruling (2019) Ji Min Chu No. 4-3, granting Northeast Securities Co., Ltd.'s application to withdraw the lawsuit against HOANG KIEU. On August 28, 2020, the High People's Court of Jilin Province issued Civil Judgment (2019) Ji Min Chu No. 42101, ordering: 1. Defendants RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Plaintiff Northeast Securities Co., Ltd., within ten days of the effective date of this judgment, a loan principal of CNY 489,000,000 and interest (calculated up to October 8, 2019, as CNY 65,454,577.78, with further interest calculated based on CNY 489,000,000 at a rate of 12.8% per annum from October 9, 2019, to the date of actual payment); 2. Defendants RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay penalties to Plaintiff Northeast Securities Co., Ltd. within ten days of the effective date of this judgment (calculated up to October 8, 2019, as CNY 47,250,600.00, with further liquidated damages calculated based on CNY 489,000,000 at a rate of 0.03% per day from October 9, 2019, to the date of actual payment); 3. Defendants Shanghai KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. shall bear joint and several liability for the aforementioned

payment obligations in Items One and Item Two. After assuming the guarantee responsibility, Shanghai KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. may recourse against RAAS CHINA LIMITED; 4. Plaintiff Northeast Securities Co., Ltd. has the priority to receive compensation within the scope of the confirmed claims in Item One and Item Two from the discounted, auctioned, or sold proceeds of the 73,430,000 pledged shares of "Shanghai RAAS" (stock code: 002252) owned by Defendant RAAS CHINA LIMITED. If any monetary obligation is not fulfilled within the time limit set out in this judgment, the interest on the debt for the delayed performance period shall be doubled in accordance with Article 253 of the "Civil Procedure Law of the People's Republic of China." Defendants RAAS CHINA LIMITED, Shenzhen RAAS Kaiji Investment Consulting Co., Ltd., Shanghai KHKMY Import & Export Co., Ltd., and Kerui Group Co., Ltd. shall bear the case acceptance fee of CNY 3,050,325.89 and the preservation fee of CNY 5,000. After the judgment of the trial of first instance was issued, Shanghai KHKMY appealed to the Supreme People's Court, and later applied to withdraw the appeal. On June 24, 2022, the Supreme People's Court issued "Civil Ruling" (2021) Zui Gao Fa Zhong No.488, ruling that the application of Shanghai KHKMY to withdraw the appeal is granted, and the judgment of trial of the first instance shall become effective on the date of the service of the ruling. Due to the approximate pledged stock's market value being only CNY 400,000,000, the above-mentioned debts could not be fully repaid. In addition, HOANG KIEU has signed a "Guarantee Agreement," voluntarily providing a joint and several guarantee liability for the loan. Now, Northeast Securities has filed this lawsuit to the People's Court, requesting the Court to order HOANG KIEU to assume the joint and several liability for the above debts. Northeast Securities Co., Ltd. pleads with the People's Court to ascertain the facts in accordance with the law and support all Plaintiff's claims.

HOANG KIEU did not appear in court and did not submit a defense.

The parties submitted evidence regarding the claims in accordance with the law, and this Court organized evidence exchange and cross-examination. This Court now finds the following facts: In January 2019, Northeast Securities Co., Ltd. filed a lawsuit to the High People's Court of Jilin Province, suing RAAS CHINA LIMITED, Shenzhen RAAS Kaiji Investment Consulting Co., Ltd., HOANG KIEU, Shanghai KHKMY Import & Export Co., Ltd., and Kerui Group Co., Ltd. During the trial, Northeast Securities Co., Ltd. applied to withdraw the lawsuit against HOANG KIEU. On November 20, 2019, the High People's Court of Jilin Province issued Civil Ruling (2019) Ji Min Chu No.4-3, granting Northeast Securities Co., Ltd.'s application to withdraw the lawsuit against HOANG KIEU.

On August 28, 2020, the High People's Court of Jilin Province issued Civil Judgment (2019) Ji Min Chu No.4, holding that: On April 28, 2016, RAAS China (Party A) and Northeast Securities (Party B) signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered A160000885, and signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement" numbered 20160503505058000l on the following day. The agreement stipulated that: RAAS China would pledge its 31,831,000 shares of "Shanghai RAAS" (stock code: 002252) to obtain a loan of CNY 500,000,000 from Northeast Securities, with an initial transaction date of May 3, 2016, and a repurchase date of July 3, 2017, for a term of 426 days. The repurchase interest rate was 7.4%, and the repurchase transaction amount was CNY 543,783,333.33. The interest of the stock pledge period would be settled on a quarterly basis. The interest for each quarter should be deposited into the fund

account on the 27th calendar day of the last month in the quarter (March, June, September, December), but can be deferred in case of legal holidays. Article 48 of the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" stipulated that "Party A and Party B shall perform the relevant articles of this agreement in a strict and comprehensive manner, and no party shall breach the agreement;" "The breaching party shall bear the liability for breach unless exempted by the law or this agreement." Article 49 stipulated that "Party A shall be deemed as breaching in the event of any of the following:…(2) the securities or funds transfer for the repurchase cannot be completed due to reasons attributable to Party A upon maturity repurchase, early repurchase, or deferred repurchase;…(5) Party A fails to pay the interest on time…The day following the occurrence of the aforementioned events shall be deemed as the commencement date of the breach. Article 50 stipulates: "In the event that Party A violates Item 2, 3, 4, 5, 6 of Article 49 of this agreement, Party A shall pay Party B a penalty, and Party B may dispose of the pledged securities. The penalty=default amount*number of days in default*0.03%." Article 5 stipulates that "In the event of a default by Party A, Party B may dispose of the corresponding pledged securities in accordance with the agreement and have priority to the proceeds. In addition, the agreement stipulates that the dispute resolution shall be governed by the laws, regulations, or rules of the People's Republic of China."

On May 3, 2016, RAAS China pledged its 31,831,000 shares of "Shanghai RAAS" (stock code: 002252) to Northeast Securities, with Northeast Securities as the pledgee. On the same day, Northeast Securities transferred CNY 500,000,000 to RAAS China's account from the stock trading system account. Deducting a handling fee of CNY 7,783.1, the actual amount transferred was CNY 499,992,216.9. On September 27, 2016, following a capital increase of 8 shares for every 10 shares of "Shanghai RAAS," the pledged shares increased to 57,295,800 shares.

On June 27, 2017, after reaching a consensus, RAAS China and Northeast Securities changed the elements of the repurchase transaction and signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered 20170001204, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-2" numbered 201706285050580001, and "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-3" numbered 201706285050580002. The repurchase transaction date changed from July 3, 2017, to July 3, 2018. The repurchase interest rate changed to 6.4% per annum. The number of pledged shares changed to 49,930,000, after lifting the pledge on 7,365,800 shares.

Northeast Securities brought a lawsuit to this Court because RAAS China failed to perform the repurchase obligation on July 3, 2018. On August 10, 2018, RAAS China (Party A), Shenzhen Kaiji (Party B), HOANG KIEU (Party C-1), Shanghai KHKMY (Party C-2), Kerui (Party C-3), and Northeast Securities (Party D) signed the "Supplementary Agreement and Settlement Agreement for the Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction" numbered 20170001204(Bu)-6, which stipulated that: Party A would provide a supplementary pledge of its 23,500,000 shares of "Shanghai RAAS;" the stock pledge repurchase period between Party A and Party D was deferred to January 3, 2019, with the repurchase interest rate changing to 12.8% per annum. Between July 3, 2018, to January 3, 2019, Party A shall repay a principal from CNY Three Million to CNY One Hundred Million to Party D. The repaid principal shall be no less than CNY One Hundred Million prior to November 20, 2018, and no less than CNY Three Hundred Million prior to December 20, 2018. All debts shall be repaid prior to January 3, 2019. If Party A fails to pay the principal and interest in accordance

with the agreement, or an early repurchase event stipulated in this agreement occurs, it shall be deemed a default, and Party A shall pay a penalty to Party D from the date of default. The amount penalty=amount of owed principal*number of days in default*0.03%. It was also stipulated that Party B shall join Party A in paying the aforementioned principal, interest, and penalty. Party C-1 and Party C-2 confirmed that they would assume joint and several liability for all Party A's debts under this agreement, and the agreement concerning the rights and obligations under the "Guarantee Agreement" formerly signed by Party C-1 and Party C-2 shall continue to be valid. Party C-3 confirmed that it would assume the joint and several liability for all debts owed by Party A under this agreement, and signed a "Guarantee Agreement" with Party D. The agreement was governed by the laws and regulations of the People's Republic of China (excluding Hong Kong, Macau, and Taiwan). The agreement was a supplementary agreement to the original agreement, and shall prevail in the event of any inconsistency between the supplementary agreement and the original agreement, while the other provisions of the original agreement continue to be valid. On the same day, RAAS China and Northeast Securities signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-1" numbered 201808105050580002, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-2" numbered 2201808105050580001, clarifying the matters of the supplementary pledge, deferred repurchase, and the change of elements of the agreements, and registered the supplementary pledge for the 23,500,000 shares of "Shanghai RAAS." Kerui signed a "Guarantee Agreement" with the creditor Northeast Securities, as a guarantor. As of August 10, 2018, RAAS China pledged 73,430,000 shares of "Shanghai RAAS" (stock code 002252) to Northeast Securities.

It is also found that on April 29, 2016, Party A HOANG KIEU, Shanghai KHKMY, as guarantors, signed a "Guarantee Agreement" numbered SHLS-LSZG-HK with the creditor, Northeast Securities. The guarantee agreement stipulated that: in order to ensure the performance of the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered A160000885, and the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement" (hereinafter referred to as the "Primary Agreement") numbered 201605035050580001 signed by RAAS China and Northeast Securities, Party A was willing to provide a guarantee for all the payment obligations under the primary agreement of the debtor, RAAS China. The scope of the guarantee includes all debts under the primary agreement, including but not limited to all repurchase amounts, penalties, damages incurred by the debtor's default of the primary agreement, other payments payable to Party B by the debtor (including but not limited to relevant procedural costs, telecommunication costs, and miscellaneous costs), and the costs incurred by Party B's realization of the claim and guarantee rights (including but not limited to litigation costs, arbitration costs, property preservation fees, travel expenses, enforcement costs, evaluation costs, auction fees, notary costs, service costs, announcement costs, and attorney's fees). The guarantee method is a joint and several liability guarantee. The guarantee period shall be from the effective date of the primary agreement to two years after the debts under the primary agreement come due. If Party A agrees to an extension of the debt, with the guarantor's consent, the guarantee period shall extend to two years after the debts come due as per the extension agreement. If Party B and the debtor agree to amend the provisions of the primary agreement, Party A agrees to bear the joint and several guarantee liability for the debts under the amended primary agreement, without further consent given by Party A. However, without a prior consent by Party A, if Party B and the debtor agree to extend the performance period of the debts or increase the principal amount of the debts, Party A may only bear the

guarantee liability for the debts under the original terms of the primary agreement. If the debts under the primary agreement come due and the debtor fails to fully perform in a timely manner, Party A shall assume the guarantee liability within the guarantee scope. Regardless of whether Party B holds other guarantees to the debts under the primary agreement (including but not limited to guarantees, mortgages, pledges, guarantee letters, standby letters of credit), when the aforementioned guarantees become valid, whether the aforementioned guarantees are valid, whether Party B asserts guarantee rights against other guarantors, whether a third party agrees to bear partial or all debts under the primary agreement, or whether the debtor itself provides other guarantees, Party A's guarantee liability under this agreement shall not be reduced or exempted. Party B may directly demand Party A to assume the guarantee liability in accordance with this agreement. Party A declares and promises to Party B that Party A has the legal capacity to be a guarantor, and Party A's signing and fulfilling of obligations under this agreement comply with the laws, regulations, and rules. Both parties agree that this agreement shall be governed by the laws of the People's Republic of China. The "Guarantee Agreement" was notarized on May 3 of the same year.

On August 10, 2018, Kerui (Party A), as the guarantor, and Northeast Securities (Party B), as the creditor, signed a "Guarantee Agreement," which stipulated that: in order to ensure the performance of the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered A160000885, and the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement" numbered 201605035050580001, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered 20170001204, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-2" numbered 201706285050580001, "Supplementary Agreement and Settlement Agreement for the Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction" (numbered 20170001204(Bu)-6), and other relevant agreements (hereinafter referred to as the "Primary Agreement") signed by RAAS China and Northeast Securities, Party A was willing to provide a guarantee for all the payment obligations under the primary agreement of the debtor, RAAS China. The scope of the guarantee includes all debts under the primary agreement, including but not limited to the initial transaction amount, all interest, penalties, damages, compensation for early repurchase, damages and other costs incurred by the debtor's default (including but not limited to relevant procedural costs, telecommunication costs, and miscellaneous costs), and the costs incurred by Party B's realization of the claim and guarantee rights (including but not limited to litigation costs, arbitration costs, property preservation fees, travel expenses, enforcement costs, evaluation costs, auction fees, notary costs, service costs, announcement costs, and attorney's fees). The guarantee method is an irrevocable joint and several liability guarantee. The guarantee period shall be from the effective date of the primary agreement to two years after the debts under the primary agreement come due (including early repurchase and deferred repurchase. If the debts under the primary agreement are due and the debtor fails to pay in full timely, Party B may directly demand Party A to assume the guarantee liability without demanding the debtor to pay or taking enforcement measures against the debtor. If there are multiple guarantees for the debts coexisting under the primary agreement (including but not limited to guarantees, mortgages, pledges, difference make-ups), and Party B deduces or exempts the guarantee liability of part of the guarantors (including where the collateral is provided by the debtor), Party A agrees that its guarantee liability shall not be influenced and it shall continue to assume the guarantee liability within the scope of the guarantee. Party A hereby explicitly waives the defense of demanding the enforcement of other guarantees first. Party A declares and promises to Party B that Party A has

the legal capacity to be a guarantor, and Party A's signing and fulfilling of obligations under this agreement comply with the laws, regulations, and rules. If this agreement becomes invalid due to reasons attributable to Party A's fault, Party A shall compensate Party B for all damages within the scope of the guarantee. Both parties agree that this agreement shall be governed by the laws of the People's Republic of China.

It is further found that Shenzhen Kaiji is a wholly-owned subsidiary of RAAS China. Shenzhen Kaiji repaid the aforementioned loan interest of CNY 8,088,888.89 on December 26, 2017, repaid an interest of CNY 8,000,000 on March 26, 2018, an interest of CNY 8,177,777.78 on June 26, 2018, an interest of CNY 533,333.33 on July 3, 2018, and an interest of CNY 15,233,422.22 on September 27, 2018. As of today, the formerly owed interest has been repaid in full.

RAAS China repaid a loan principal of CNY 3,000,000 on August 13, 2018, a loan principal of CNY 3,000,000 on September 19, a loan principal of CNY 3,000,000 on October 22, and a loan principal of CNY 1,000,000 on November 20. On January 2, 2019, RAAS China repaid a loan principal of CNY 1,000,000. The above-mentioned funds were transferred to Northeast Securities's account by Shenzhen Kaiji. As of the stock repurchase transaction date, January 3, 2019, RAAS China still owes a loan principal of CNY 489,000,000.... The holding is as follows: I. Defendants RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Plaintiff Northeast Securities Co., Ltd. a loan principal of CNY 489,000,000 and interest within ten days from the effective date of this judgment (as of October 8, 2019, the interest is CNY 65,454,577.78; thereafter the interest is calculated based on CNY 489,000,000 at a rate of 12.8% per annum, from October 9, 2019, to the date of actual payment); II. Defendant RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Plaintiff Northeast Securities Co., Ltd. a penalty within ten days of the effective date of this judgment (as of October 8, 2019, the penalty is CNY 47,250,600; thereafter the penalty is calculated based on CNY 489,000,000 at a rate of 0.03% per day, from October 9, 2019, to the date of actual payment); III. Defendants Shanghai KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. shall assume the joint and several liability for the payment obligation under Item One and Item Two. After assuming the guarantee liability, Shanghai KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. may recourse against RAAS CHINA LIMITED; IV. Plaintiff Northeast Securities shall have priority to the proceeds of the discount, auction, or sale of RAAS CHINA LIMITED's pledged 73,430,000 shares of "Shanghai RAAS" (stock code 002252) within the scope of the claims ascertained by Item One and Item Two of this judgment.

After the above judgment was issued, on September 28, 2020, Shanghai KHKMY Import & Export Co., Ltd. lodged an appeal to the Supreme People's Court, but subsequently withdrew the appeal. On June 24, 2022, the Supreme People's Court entered Civil Ruling (2021) Zui Gao Fa Min Zhong No.488. Now Civil Judgment (2019) Ji Min Chu No.4 has become effective and entered the enforcement phase. The High People's Court entered Enforcement Ruling (2023) Ji Zhi No.1-1 on May 8, 2023, Enforcement Ruling (2023) Ji Zhi No.1-2 on July 12, 2023, and Enforcement Ruling (2023) Ji Zhi No.1-3 on August 28, 2023, collectively seizing CNY 6,146,091 from Shanghai RAAS Blood Products Co., Ltd., Shanghai KHKMY Import & Export Co., Ltd., and Kerui Group Co., Ltd., totaling CNY 6,087,961 after deducting the enforcement fee of CNY 58,130. After the Court auctioned the pledged shares of Shanghai RAAS Blood Products Co., Ltd. but failed to sell the shares at the auction, the shares were evaluated at CNY

530,164,600 and used to offset the debt. The transfer fee was CNY 73,430, the stamp duty was CNY 265,082.3, and the enforcement fee was CNY 597,564. After deducting these fees, the shares were worth CNY 529,228,523.7. In total, Northeast Securities obtained CNY 535,316,484.7 from the enforcement proceeds.

From December 2019 to February 2022, MA Duo, an employee of Northeast Securities Co., Ltd., communicated and reconciled multiple times with YU Jianying, a designated person by HOANG KIEU, and HOANG KIEU via WeChat.

This Court is of the opinion that Article 41 of the "Law on the Application of Laws to Foreign-Related Civil Relations of the People's Republic of China" stipulates that: "The parties concerned may choose the laws applicable to contracts by agreement. If the parties do not choose, the laws at the habitual residence of the party whose fulfillment of obligations can best reflect the characteristics of this contract or other laws which have the closest relation with this contract shall apply." In the contested agreements, the parties all agree to apply the law of the People's Republic of China to settle the dispute, so in accordance with the law, this Court applies the law of the People's Republic of China as the proper law for this case.

As to whether HOANG KIEU should bear the joint and several guarantee liability: Upon review, the effective Civil Judgment (2019) Ji Min Chu No.4 has held that RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Northeast Securities the loan principal, interest, and penalty. It is also held that on April 29, 2016, HOANG KIEU and Shanghai KHKMY, as guarantors, entered into "Guarantee Agreement" number SHLS-LSZG-HK with the creditor Northeast Securities, and that the Agreement is legal and valid. Therefore, this Court confirms the above-mentioned facts. In accordance with the "Supplementary Agreement and Settlement Agreement for the Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction" (numbered 20170001204(Bu)-6), HOANG KIEU would continue to assume the joint and several guarantee liability for all debts owed by RAAS CHINA LIMITED under the said agreement. Due to this dispute occurring before the implementation of the "Civil Code of the People's Republic of China," the laws prior to the implementation of the "Civil Code of the People's Republic of China" shall be applied. Article 18 of the "Guarantee Law of the People's Republic of China" stipulates that: "A guarantee with joint and several liability is a guarantee whereby the parties agree in a guarantee contract that the guarantor and the debtor are jointly and severally liable for the obligation. If the debtor under a joint and several guarantee fails to fulfill his debt upon the expiration of the term for performance stipulated in the principal contract, the creditor may require the debtor to fulfill his debt or require the guarantor to assume guarantee liability within the scope of guarantee." Article 176 of the "Property Law of the People's Republic of China" stipulates that "where a secured creditor's rights are secured by property and a guarantor, the creditor shall realize creditors' rights pursuant to the agreement when the debtor defaults on its debt obligations or where circumstances stipulated by the parties for the realization of the security interest has occurred; where no agreement exists or the agreement is ambiguous, and the debtor has provided security in the form of property, the creditor shall realize creditors' rights through the property first; where security in the form of property is provided by a third party, the creditor may realize creditors' rights through the property or claim against the guarantor. The third party shall have the right to claim against the debtor upon discharging the guarantee." Article 31 of the "Guarantee Law of the People's Republic of China" stipulates that "after a guarantor has borne his guarantee liability, he shall be entitled to claim repayment from the debtor." In accordance with the above-mentioned laws, and

the guarantee agreement, Northeast Securities may demand HOANG KIEU to assume the joint and several liability for the loan principal, interest, and penalty owed by RAAS China. After HOANG KIEU assumes the guarantee liability, he may recourse against RAAS China.

As to the amount of the loan principal, interest, and penalty: Article 21 of the "Interpretation of the Supreme People's Court on Several Issues Concerning Application of the 'Contract Law of the People's Republic of China' (2)" stipulates that: "A debtor shall pay interest and costs in addition to the principal amount of debt. Where his/her payment is not enough to cover all the indebtedness, and the relevant parties have not made any agreement, the People's Courts shall settle the indebtedness in accordance with the following order: (1) the relevant costs of actualizing the indebtedness; (2) interest; (3) principal debt." In this case, Northeast Securities Co., Ltd. has obtained the enforcement proceeds of CNY 535,316,484.7. Therefore, in accordance with the above-mentioned law, the amount ascertained by Civil Judgment (2019) Ji Min Chu No.4, the "Guarantee Agreement," and the "Settlement Agreement," the claim of Northeast Securities Co., Ltd. to demand HOANG KIEU to assume the joint and several guarantee liability for the outstanding loan principal of CNY 269,610,685.7 and interest is appropriate. The interest shall be calculated from September 2, 2023, based on the remaining principal of CNY 269,610,685.7 at a rate of 12.8% per annum, to the date of actual payment. Northeast Securities Co., Ltd. claims that HOANG KIEU should jointly pay the penalties, calculated from the date of default up to October 8, 2019, as CNY 47,250,600. From October 9, 2019, the penalties should be based on CNY 489,000,000 at a daily rate of 0.03%, amounting to CNY 208,754,100 by September 1, 2023. From September 2, 2023, the penalties should be calculated at a rate of 0.03% per day on the principal of CNY 269,610,685.7 to the date of actual payment. This Court supports this claim.

In conclusion, in accordance with Article 8, Article 60, Article 107, Article 114 Clause 1, Article 126, Article 206, and Article 207 of the "Contract Law of the People's Republic of China," Article 176, Article 208, Article 226, and Article 229 of the "Property Law of the People's Republic of China," Article 18 and Article 31 of the "Guarantee Law of the People's Republic of China," Article 21 of the "Interpretation of the Supreme People's Court on Several Issues Concerning Application of the 'Contract Law of the People's Republic of China' (2)," Article 41 of the "Law on the Application of Laws to Foreign-Related Civil Relations of the People's Republic of China," and Article 147 of the "Civil Procedure law of the People's Republic of China," the holding is as follows:

I. Defendant HOANG KIEU shall, within ten days of the effective date of this judgment, jointly and severally with RAAS CHINA LIMITED, pay Northeast Securities Co., Ltd. the remaining loan principal of CNY 269,610,685.7 and interest (calculated from September 2, 2023, based on the remaining principal of CNY 269,610,685.7 at a rate of 12.8% per annum to the date of actual payment).

II. Defendant HOANG KIEU shall, within ten days from the effective date of this judgment, jointly and severally with RAAS CHINA LIMITED, pay Northeast Securities Co., Ltd. the penalties (calculated from the date of default up to October 8, 2019, as CNY 47,250,600; from October 9, 2019, based on CNY 489,000,000 at a daily rate of 0.03%, amounting to CNY 208,754,100 by September 1, 2023; and from September 2, 2023, calculated at a daily rate of 0.03% on the principal of CNY 269,610,685.7 to the date of actual payment).

If any monetary obligation is not fulfilled within the time limit set out in this judgment, the interest on the debt for the delayed performance period shall be doubled in accordance with Article 260 of the "Civil Procedure Law of the People's Republic of China."

HOANG KIEU shall bear the case acceptance fee of CNY 4,747,726.

In case of any disagreement with this judgment, you may, within thirty days after the service of this judgment, submit an appeal to this Court in the same copies as the number of the opposing party to appeal to the High People's Court of Jilin Province.

Presiding Judge: GONG Ping

People's Assessor: ZHENG Tingyuan

People's Assessor: LIU Yang

[Seal of the the Intermediate People's Court of Changchun City of Jilin Province]

November 30, 2023

Clerk: WANG Lianhe

[verified true copy]

# NOTARIAL CERTIFICATE

(2024) J C G A Z W M Zi, No. 41410

Applicant: Northeast Securities Co., Ltd., United Social Credit Code: 91220000664275090B, Address: No. 6666, Shengtai Avenue, Changchun City

Legal Representative: Li Fuchun, male, born on [redacted], ID Card No [redacted]

Issue under notarization: Civil Judgment

This is to certify that the foregoing copy of (2022) Ji 01 Min Chu No. 3192 Civil Judgment issued by The Intermediate People's Court of Changchun City of Jilin Province on November 30, 2023 conforms to the original, and that the original document is authentic.

Notary: Gao Xin

Changchun Guoan Notary Public Office

Jilin Province

The People's Republic of China

August 19, 2024

LI20719402

# 公 证 书

（2024）吉长国安证外民字第 41411 号

申请人：东北证券股份有限公司，统一社会信用代码：91220000664275090B，住所：长春市生态大街 6666 号。

法定代表人：李福春，男，[redacted] 公民身份号码：[redacted]。

公证事项：译本与原本相符

兹证明前面的（2024）吉长国安证外民字第 41410 号《公证书》的英文译本与该公证书中文原本相符。

中华人民共和国吉林省长春市国安公证处

公证员 高鑫

2024 年 8 月 19 日

吉林省长春市国安公证处

LI20719403

# NOTARIAL CERTIFICATE

(2024) J C G A Z W M Zi, No.41411

Applicant: Northeast Securities Co., Ltd., United Social Credit Code: 91220000664275090B, Address: No. 6666, Shengtai Avenue, Changchun City

Legal Representative: Li Fuchun, male, born on [redacted], ID Card No. [redacted]

Issue under notarization: translation copy being in conformity with original copy

This is to certify that the English translated copy of Notarial Certificate (2024) J C G A Z W M Zi No. 41410 attached hereto is in conformity with the Chinese original copy of the Notarial Certificate.

Notary: Gao Xin

Changchun Guoan Notary Public Office

Jilin Province

The People's Republic of China

August 19, 2024

LI20719404

本附加证明书仅证明公文书上的签名、签署人签名时的身份，需要时可证明公文书上的印章属实。附加证明书不对公文书内容予以证明。
This Apostille only certifies the authenticity of the signature, the capacity of the person who has signed the public document and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued.
Visit https://consular.mfa.gov.cn/VERIFY/ and scan the QR code to verify the issuance of this Apostille.

11258848

# 附加证明书
# APOSTILLE

（1961年10月5日海牙公约）
（Convention de La Haye du 5 octobre 1961）

1. 文书出具国：Country: 中华人民共和国 People's Republic of China

本公文书 This public document

2. 签署人 has been signed by: 高鑫 Gao Xin

3. 签署人身份 acting in the capacity of: 公证员 Notary Public

4. 印鉴名称 bears the seal/stamp of: 吉林省长春市国安公证处 Changchun Guoan Notary Public Office,Jilin Province

证明 Certified

5. 签发地 at: 长春 Changchun

6. 签发日期 the: 2024年08月23日 August 23,2024

7. 签发人 by: 曹光荣/Cao Guangrong 吉林省外事办公室 Foreign Affairs Office of Jilin Province

8. 附加证明书编号 No: 认字第242200073096号

9. 签发机关印鉴：Seal/Stamp:

10. 签名：Signature: 曹光荣

# ENGLISH TRANSLATION

United States, regular Mail, with Jilin

[bar code]

24007880-8

# NOTARIAL CERTIFICATE

Changchun Guoan Notary Public Office, Jilin Province, The People's Republic of China

**The Intermediate People's Court of Changchun City of Jilin Province of**

**The People's Republic of China**

**Civil Judgment**

(2022) Ji 01 Min Chu No.3192

Plaintiff: Northeast Securities Co., Ltd., residing at No.6666 Shengtai Avenue, Changchun City, Jilin Province, the People's Republic of China.

Legal Representative: LI Fuchun, Chairman of the Board.

Agent *Ad Litem*: LI Xiaoli, Lawyer at Beijing Yanran Law Firm.

Agent *Ad Litem*: LIU Zhihui, female, employee of Northeast Securities Co., Ltd.

Defendant: HOANG KIEU (HUANG Kai), male, U.S. citizen, born on [redacted], residing at 54th Floor, Hopewell Centre, No.183 Queen's Road East, Hong Kong Special Administrative Region, the People's Republic of China.

Regarding a guarantee contract dispute between Plaintiff Northeast Securities Co., Ltd. and Defendant HOANG KIEU, the case reached this Court's docket on October 8, 2022. This Court publicly tried the case with the ordinary procedure in accordance with the law. The agent *ad litem* of Northeast Securities, LI Xiaoli and LIU Zhihui, appeared and participated in the trial. Defendant HOANG KIEU (HUANG Kai) failed to attend and participate in the trial without a justifiable reason after being lawfully summoned by this Court. This Court tried the case in absentia in accordance with the law. This case has now been concluded after the trial.

Northeast Securities submitted the following claims to this Court: 1. HOANG KIEU (HUANG Kai) shall assume the joint and several liability to pay the loan principal of CNY 489,000,000 and interest (as of October 8, 2019, the interest is CNY 65,454,577.78; thereafter, the interest should be calculated based on CNY 489,000,000 at a rate of 12.8% per annum from October 9, 2019, to the date of actual payment, totaling CNY 249,579,377.78 as of September 1, 2022) to Northeast Securities Co., Ltd. payable by RAAS CHINA LIMITED under Item 1 of the "Civil Judgment" (2019) Ji Min Chu No.4; 2. HOANG KIEU (HUANG Kai) shall assume the joint and several liability to pay the penalty (temporarily amasses to CNY 47,250,600 as of October 8, 2019; thereafter, the penalty should be calculated based on CNY 489,000,000 at a rate of 0.03% per day to the date of actual payment, totaling CNY 202,605,900 as of September 1, 2022) to Northeast Securities Co., Ltd. payable by RAAS CHINA LIMITED under Item 2 of the "Civil Judgment" (2019) Ji Min Chu No.4; 3. HOANG KIEU (HUANG Kai) shall bear the costs incurred in the realization of the claim, including litigation costs, property preservation fees, etc. During the trial, the claims were amended to the following: 1. HOANG KIEU (HUANG Kai) shall assume the joint and several liability to pay Northeast Securities Co., Ltd. an outstanding loan principal of CNY 269,610,685.7, and the corresponding interest, with the interest calculated based on a principal of CNY 269,610,685.7, at a rate of 12.8% per annum, from September 2, 2023, to the date of actual payment; 2. HOANG KIEU (HUANG Kai) shall assume a joint and several liability to pay a penalty to Northeast Securities Co., Ltd. with the penalty calculated from the date of default, up to October 8, 2019, as CNY 47,250,600, and thereafter based on a principal of CNY 489,000,000 at a rate of 0.03% per day, totaling CNY 208,754,100 as of September 1, 2023, with

further calculation from September 2, 2023, until the date of actual payment based on a principal of CNY 269,610,685.70. Facts and Reasons: RAAS CHINA LIMITED (hereinafter referred to as the "Financing Party") is a shareholder of the listed company Shanghai RAAS Blood Products Co., Ltd. (Stock Name: Shanghai RAAS, Stock Code: 002252), and HOANG KIEU (HUANG Kai) is the legal representative of the Financing Party. In April 2016, the financing party and Northeast Securities Co., Ltd. signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" and the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement." The financing party pledges 31,831,000 shares of Shanghai RAAS (stock code: 002252) to obtain a loan of CNY 500,000,000 (after subsequent stock distributions by the listed company, partial release of the pledged stocks by Plaintiff, and supplementary pledges by the financing party, the pledged stocks have now changed to 73,430,000 shares). HOANG KIEU (HUANG Kai) and Shanghai KHKMY Import & Export Co., Ltd. (hereinafter referred to as "Shanghai KHKMY") signed the "Guarantee Agreement" with Northeast Securities Co., Ltd., providing a joint and several liability guarantee for all debts under the stock pledge repurchase transaction. The said guarantee agreement was notarized. Thereafter, the financing party defaulted, and Northeast Securities Co., Ltd. filed a lawsuit with the High People's Court of Jilin Province in July 2018, requesting the financing party, HOANG KIEU (HUANG Kai), and Shanghai KHKMY to fulfill their repayment obligations. After consultations, on August 10, 2018, all parties signed the "Supplementary Agreement and Settlement Agreement to the Stock Pledge Repurchase Transaction," stipulating that the financing party would provide an additional pledge of 23,500,000 shares of Shanghai RAAS, and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. (hereinafter referred to as "Shenzhen RAAS") would join in the payment of the principal, interest, and penalties for the loan. Kerui Group Co., Ltd. (hereinafter referred to as "Kerui Group") provided a joint and several liability guarantee for the debt, and all parties signed the "Guarantee Agreement." Northeast Securities Co., Ltd. subsequently withdrew the lawsuit. After the settlement agreement was signed, the financing party and the guarantors only repaid CNY 11,000,000 of the loan principal and defaulted again. In January 2019, Northeast Securities Co., Ltd. filed a second lawsuit with the High People's Court of Jilin Province, requesting the financing party and Shenzhen RAAS to fulfill their repayment obligations and pay interest and penalties, and for HOANG KIEU (HUANG Kai), Shanghai KHKMY, and Kerui Group to bear joint and several liability for repayment. Due to HOANG KIEU (HUANG Kai) being a U.S. citizen, to avoid complications with foreign service affecting the case progress, Northeast Securities Co., Ltd. applied to withdraw the lawsuit against HOANG KIEU (HUANG Kai). On November 20, 2019, the High People's Court of Jilin Province issued Civil Ruling (2019) Ji Min Chu No. 4-3, granting Northeast Securities Co., Ltd.'s application to withdraw the lawsuit against HOANG KIEU (HUANG Kai). On August 28, 2020, the High People's Court of Jilin Province issued Civil Judgment (2019) Ji Min Chu No. 42101, ordering: 1. Defendants RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Plaintiff Northeast Securities Co., Ltd., within ten days of the effective date of this judgment, a loan principal of CNY 489,000,000 and interest (calculated up to October 8, 2019, as CNY 65,454,577.78, with further interest calculated based on CNY 489,000,000 at a rate of 12.8% per annum from October 9, 2019, to the date of actual payment); 2. Defendants RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay penalties to Plaintiff Northeast Securities Co., Ltd. within ten days of the effective date of this judgment (calculated up to October 8, 2019, as CNY 47,250,600.00, with further liquidated damages calculated based on CNY 489,000,000 at a rate of 0.03% per day from October 9, 2019, to the date of actual payment); 3. Defendants Shanghai

KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. shall bear joint and several liability for the aforementioned payment obligations in Items One and Item Two. After assuming the guarantee responsibility, Shanghai KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. may recourse against RAAS CHINA LIMITED; 4. Plaintiff Northeast Securities Co., Ltd. has the priority to receive compensation within the scope of the confirmed claims in Item One and Item Two from the discounted, auctioned, or sold proceeds of the 73,430,000 pledged shares of "Shanghai RAAS" (stock code: 002252) owned by Defendant RAAS CHINA LIMITED. If any monetary obligation is not fulfilled within the time limit set out in this judgment, the interest on the debt for the delayed performance period shall be doubled in accordance with Article 253 of the "Civil Procedure Law of the People's Republic of China." Defendants RAAS CHINA LIMITED, Shenzhen RAAS Kaiji Investment Consulting Co., Ltd., Shanghai KHKMY Import & Export Co., Ltd., and Kerui Group Co., Ltd. shall bear the case acceptance fee of CNY 3,050,325.89 and the preservation fee of CNY 5,000. After the judgment of the trial of first instance was issued, Shanghai KHKMY appealed to the Supreme People's Court, and later applied to withdraw the appeal. On June 24, 2022, the Supreme People's Court issued "Civil Ruling" (2021) Zui Gao Fa Zhong No.488, ruling that the application of Shanghai KHKMY to withdraw the appeal is granted, and the judgment of trial of the first instance shall become effective on the date of the service of the ruling. Due to the approximate pledged stock's market value being only CNY 400,000,000, the above-mentioned debts could not be fully repaid. In addition, HOANG KIEU (HUANG Kai) has signed a "Guarantee Agreement," voluntarily providing a joint and several guarantee liability for the loan. Now, Northeast Securities has filed this lawsuit to the People's Court, requesting the Court to order HOANG KIEU (HUANG Kai) to assume the joint and several liability for the above debts. Northeast Securities Co., Ltd. pleads with the People's Court to ascertain the facts in accordance with the law and support all Plaintiff's claims.

HOANG KIEU(HUANG Kai) did not appear in court and did not submit a defense.

The parties submitted evidence regarding the claims in accordance with the law, and this Court organized evidence exchange and cross-examination. This Court now finds the following facts: In January 2019, Northeast Securities Co., Ltd. filed a lawsuit to the High People's Court of Jilin Province, suing RAAS CHINA LIMITED, Shenzhen RAAS Kaiji Investment Consulting Co., Ltd., HOANG KIEU, Shanghai KHKMY Import & Export Co., Ltd., and Kerui Group Co., Ltd. During the trial, Northeast Securities Co., Ltd. applied to withdraw the lawsuit against HOANG KIEU (HUANG Kai). On November 20, 2019, the High People's Court of Jilin Province issued Civil Ruling (2019) Ji Min Chu No.4-3, granting Northeast Securities Co., Ltd.'s application to withdraw the lawsuit against HOANG KIEU (HUANG Kai).

On August 28, 2020, the High People's Court of Jilin Province issued Civil Judgment (2019) Ji Min Chu No.4, holding that: On April 28, 2016, RAAS China (Party A) and Northeast Securities (Party B) signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered A160000885, and signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement" numbered 20160503505058000 1 on the following day. The agreement stipulated that: RAAS China would pledge its 31,831,000 shares of "Shanghai RAAS" (stock code: 002252) to obtain a loan of CNY 500,000,000 from Northeast Securities, with an initial transaction date of May 3, 2016, and a repurchase date of July 3, 2017, for a term of 426 days. The repurchase interest rate was 7.4%, and the repurchase transaction amount was CNY 543,783,333.33. The interest of the stock pledge period would be settled on a quarterly basis. The

interest for each quarter should be deposited into the fund account on the 27th calendar day of the last month in the quarter (March, June, September, December), but can be deferred in case of legal holidays. Article 48 of the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" stipulated that "Party A and Party B shall perform the relevant articles of this agreement in a strict and comprehensive manner, and no party shall breach the agreement;" "The breaching party shall bear the liability for breach unless exempted by the law or this agreement." Article 49 stipulated that "Party A shall be deemed as breaching in the event of any of the following:…(2) the securities or funds transfer for the repurchase cannot be completed due to reasons attributable to Party A upon maturity repurchase, early repurchase, or deferred repurchase;…(5) Party A fails to pay the interest on time…The day following the occurrence of the aforementioned events shall be deemed as the commencement date of the breach. Article 50 stipulates: "In the event that Party A violates Item 2, 3, 4, 5, 6 of Article 49 of this agreement, Party A shall pay Party B a penalty, and Party B may dispose of the pledged securities. The penalty=default amount*number of days in default*0.03%." Article 5 stipulates that "In the event of a default by Party A, Party B may dispose of the corresponding pledged securities in accordance with the agreement and have priority to the proceeds. In addition, the agreement stipulates that the dispute resolution shall be governed by the laws, regulations, or rules of the People's Republic of China."

On May 3, 2016, RAAS China pledged its 31,831,000 shares of "Shanghai RAAS" (stock code: 002252) to Northeast Securities, with Northeast Securities as the pledgee. On the same day, Northeast Securities transferred CNY 500,000,000 to RAAS China's account from the stock trading system account. Deducting a handling fee of CNY 7,783.10, the actual amount transferred was CNY 499,992,216.90. On September 27, 2016, following a capital increase of 8 shares for every 10 shares of "Shanghai RAAS," the pledged shares increased to 57,295,800 shares.

On June 27, 2017, after reaching a consensus, RAAS China and Northeast Securities changed the elements of the repurchase transaction and signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered 20170001204, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-2" numbered 201706285050580001, and "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-3" numbered 201706285050580002. The repurchase transaction date changed from July 3, 2017, to July 3, 2018. The repurchase interest rate changed to 6.4% per annum. The number of pledged shares changed to 49,930,000, after lifting the pledge on 7,365,800 shares.

Northeast Securities brought a lawsuit to this Court because RAAS China failed to perform the repurchase obligation on July 3, 2018. On August 10, 2018, RAAS China (Party A), Shenzhen Kaiji (Party B), HOANG KIEU (HUANG Kai) (Party C-1), Shanghai KHKMY (Party C-2), Kerui (Party C-3), and Northeast Securities (Party D) signed the "Supplementary Agreement and Settlement Agreement for the Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction" numbered 20170001204(Bu)-6, which stipulated that: Party A would provide a supplementary pledge of its 23,500,000 shares of "Shanghai RAAS;" the stock pledge repurchase period between Party A and Party D was deferred to January 3, 2019, with the repurchase interest rate changing to 12.8% per annum. Between July 3, 2018, to January 3, 2019, Party A shall repay a principal from CNY Three Million to CNY One Hundred Million to Party D. The repaid principal shall be no less than CNY One Hundred Million prior to November 20, 2018, and no less than CNY Three Hundred Million prior to December 20, 2018. All debts shall be repaid prior to January 3, 2019. If Party A fails to pay the principal and interest in accordance with the agreement, or an early repurchase

event stipulated in this agreement occurs, it shall be deemed a default, and Party A shall pay a penalty to Party D from the date of default. The amount penalty=amount of owed principal*number of days in default*0.03%. It was also stipulated that Party B shall join Party A in paying the aforementioned principal, interest, and penalty. Party C-1 and Party C-2 confirmed that they would assume joint and several liability for all Party A's debts under this agreement, and the agreement concerning the rights and obligations under the "Guarantee Agreement" formerly signed by Party C-1 and Party C-2 shall continue to be valid. Party C-3 confirmed that it would assume the joint and several liability for all debts owed by Party A under this agreement, and signed a "Guarantee Agreement" with Party D. The agreement was governed by the laws and regulations of the People's Republic of China (excluding Hong Kong, Macau, and Taiwan). The agreement was a supplementary agreement to the original agreement, and shall prevail in the event of any inconsistency between the supplementary agreement and the original agreement, while the other provisions of the original agreement continue to be valid. On the same day, RAAS China and Northeast Securities signed the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-1" numbered 201808105050580002, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-2" numbered 201808105050580001, clarifying the matters of the supplementary pledge, deferred repurchase, and the change of elements of the agreements, and registered the supplementary pledge for the 23,500,000 shares of "Shanghai RAAS." Kerui signed a "Guarantee Agreement" with the creditor Northeast Securities, as a guarantor. As of August 10, 2018, RAAS China pledged 73,430,000 shares of "Shanghai RAAS" (stock code 002252) to Northeast Securities.

It is also found that on April 29, 2016, Party A, HOANG KIEU, Shanghai KHKMY, as guarantors, signed a "Guarantee Agreement" numbered SHLS-LSZG-HK with the creditor, Northeast Securities. The guarantee agreement stipulated that: in order to ensure the performance of the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered A160000885, and the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement" (hereinafter referred to as the "Primary Agreement") numbered 201605035050580001 signed by RAAS China and Northeast Securities, Party A was willing to provide a guarantee for all the payment obligations under the primary agreement of the debtor, RAAS China. The scope of the guarantee includes all debts under the primary agreement, including but not limited to all repurchase amounts, penalties, damages incurred by the debtor's default of the primary agreement, other payments payable to Party B by the debtor (including but not limited to relevant procedural costs, telecommunication costs, and miscellaneous costs), and the costs incurred by Party B's realization of the claim and guarantee rights (including but not limited to litigation costs, arbitration costs, property preservation fees, travel expenses, enforcement costs, evaluation costs, auction fees, notary costs, service costs, announcement costs, and attorney's fees). The guarantee method is a joint and several liability guarantee. The guarantee period shall be from the effective date of the primary agreement to two years after the debts under the primary agreement come due. If Party A agrees to an extension of the debt, with the guarantor's consent, the guarantee period shall extend to two years after the debts come due as per the extension agreement. If Party B and the debtor agree to amend the provisions of the primary agreement, Party A agrees to bear the joint and several guarantee liability for the debts under the amended primary agreement, without further consent given by Party A. However, without a prior consent by Party A, if Party B and the debtor agree to extend the performance period of the debts or increase the principal amount of the debts, Party A may only bear the guarantee liability for the debts under the original terms of the primary agreement. If the debts under the primary agreement come due and

the debtor fails to fully perform in a timely manner, Party A shall assume the guarantee liability within the guarantee scope. Regardless of whether Party B holds other guarantees to the debts under the primary agreement (including but not limited to guarantees, mortgages, pledges, guarantee letters, standby letters of credit), when the aforementioned guarantees become valid, whether the aforementioned guarantees are valid, whether Party B asserts guarantee rights against other guarantors, whether a third party agrees to bear partial or all debts under the primary agreement, or whether the debtor itself provides other guarantees, Party A's guarantee liability under this agreement shall not be reduced or exempted. Party B may directly demand Party A to assume the guarantee liability in accordance with this agreement. Party A declares and promises to Party B that Party A has the legal capacity to be a guarantor, and Party A's signing and fulfilling of obligations under this agreement comply with the laws, regulations, and rules. Both parties agree that this agreement shall be governed by the laws of the People's Republic of China. The "Guarantee Agreement" was notarized on May 3 of the same year.

On August 10, 2018, Kerui (Party A), as the guarantor, and Northeast Securities (Party B), as the creditor, signed a "Guarantee Agreement," which stipulated that: in order to ensure the performance of the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered A160000885, and the "Northeast Securities Co., Ltd. Stock Pledge Repurchase Initial Transaction Agreement" numbered 201605035050580001, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement" numbered 20170001204, "Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction Agreement-2" numbered 201706285050580001, "Supplementary Agreement and Settlement Agreement for the Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction" (numbered 20170001204(Bu)-6), and other relevant agreements (hereinafter referred to as the "Primary Agreement") signed by RAAS China and Northeast Securities, Party A was willing to provide a guarantee for all the payment obligations under the primary agreement of the debtor, RAAS China. The scope of the guarantee includes all debts under the primary agreement, including but not limited to the initial transaction amount, all interest, penalties, damages, compensation for early repurchase, damages and other costs incurred by the debtor's default (including but not limited to relevant procedural costs, telecommunication costs, and miscellaneous costs), and the costs incurred by Party B's realization of the claim and guarantee rights (including but not limited to litigation costs, arbitration costs, property preservation fees, travel expenses, enforcement costs, evaluation costs, auction fees, notary costs, service costs, announcement costs, and attorney's fees). The guarantee method is an irrevocable joint and several liability guarantee. The guarantee period shall be from the effective date of the primary agreement to two years after the debts under the primary agreement come due (including early repurchase and deferred repurchase. If the debts under the primary agreement are due and the debtor fails to pay in full timely, Party B may directly demand Party A to assume the guarantee liability without demanding the debtor to pay or taking enforcement measures against the debtor. If there are multiple guarantees for the debts coexisting under the primary agreement (including but not limited to guarantees, mortgages, pledges, difference make-ups), and Party B deduces or exempts the guarantee liability of part of the guarantors (including where the collateral is provided by the debtor), Party A agrees that its guarantee liability shall not be influenced and it shall continue to assume the guarantee liability within the scope of the guarantee. Party A hereby explicitly waives the defense of demanding the enforcement of other guarantees first. Party A declares and promises to Party B that Party A has the legal capacity to be a guarantor, and Party A's signing and fulfilling of obligations under this agreement comply with the laws, regulations, and rules. If this agreement becomes invalid due to reasons attributable to Party A's fault, Party A

shall compensate Party B for all damages within the scope of the guarantee. Both parties agree that this agreement shall be governed by the laws of the People's Republic of China.

It is further found that Shenzhen Kaiji is a wholly-owned subsidiary of RAAS China. Shenzhen Kaiji repaid the aforementioned loan interest of CNY 8,088,888.89 on December 26, 2017, repaid an interest of CNY 8,000,000 on March 26, 2018, an interest of CNY 8,177,777.78 on June 26, 2018, an interest of CNY 533,333.33 on July 3, 2018, and an interest of CNY 15,233,422.22 on September 27, 2018. As of today, the formerly owed interest has been repaid in full.

RAAS China repaid a loan principal of CNY 3,000,000 on August 13, 2018, a loan principal of CNY 3,000,000 on September 19, a loan principal of CNY 3,000,000 on October 22, and a loan principal of CNY 1,000,000 on November 20. On January 2, 2019, RAAS China repaid a loan principal of CNY 1,000,000. The above-mentioned funds were transferred to Northeast Securities' account by Shenzhen Kaiji. As of the stock repurchase transaction date, January 3, 2019, RAAS China still owes a loan principal of CNY 489,000,000…. The holding is as follows: I. Defendants RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Plaintiff Northeast Securities Co., Ltd. a loan principal of CNY 489,000,000 and interest within ten days from the effective date of this judgment (as of October 8, 2019, the interest is CNY 65,454,577.78; thereafter the interest is calculated based on CNY 489,000,000 at a rate of 12.8% per annum, from October 9, 2019, to the date of actual payment); II. Defendant RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Plaintiff Northeast Securities Co., Ltd. a penalty within ten days of the effective date of this judgment (as of October 8, 2019, the penalty is CNY 47,250,600; thereafter the penalty is calculated based on CNY 489,000,000 at a rate of 0.03% per day, from October 9, 2019, to the date of actual payment); III. Defendants Shanghai KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. shall assume the joint and several liability for the payment obligation under Item One and Item Two. After assuming the guarantee liability, Shanghai KHKMY Import & Export Co., Ltd. and Kerui Group Co., Ltd. may recourse against RAAS CHINA LIMITED; IV. Plaintiff Northeast Securities shall have priority to the proceeds of the discount, auction, or sale of RAAS CHINA LIMITED's pledged 73,430,000 shares of "Shanghai RAAS" (stock code 002252) within the scope of the claims ascertained by Item One and Item Two of this judgment.

After the above judgment was issued, on September 28, 2020, Shanghai KHKMY Import & Export Co., Ltd. lodged an appeal to the Supreme People's Court, but subsequently withdrew the appeal. On June 24, 2022, the Supreme People's Court entered Civil Ruling (2021) Zui Gao Fa Min Zhong No.488. Now Civil Judgment (2019) Ji Min Chu No.4 has become effective and entered the enforcement phase. The High People's Court entered Enforcement Ruling (2023) Ji Zhi No.1-1 on May 8, 2023, Enforcement Ruling (2023) Ji Zhi No.1-2 on July 12, 2023, and Enforcement Ruling (2023) Ji Zhi No.1-3 on August 28, 2023, collectively seizing CNY 6,146,091 from Shanghai RAAS Blood Products Co., Ltd., Shanghai KHKMY Import & Export Co., Ltd., and Kerui Group Co., Ltd., totaling CNY 6,087,961 after deducting the enforcement fee of CNY 58,130. After the Court auctioned the pledged shares of Shanghai RAAS Blood Products Co., Ltd. but failed to sell the shares at the auction, the shares were evaluated at CNY 530,164,600 and used to offset the debt. The transfer fee was CNY 73,430, the stamp duty was CNY 265,082.30, and the enforcement fee was CNY 597,564. After deducting these fees, the shares were worth CNY 529,228,523.70. In total, Northeast Securities obtained CNY 535,316,484.70 from the enforcement proceeds.

From December 2019 to February 2022, MA Duo, an employee of Northeast Securities Co., Ltd., communicated and reconciled multiple times with YU Jianying, a designated person by HOANG KIEU (HUANG Kai), and HOANG KIEU (HUANG Kai) via WeChat.

This Court is of the opinion that Article 41 of the "Law on the Application of Laws to Foreign-Related Civil Relations of the People's Republic of China" stipulates that: "The parties concerned may choose the laws applicable to contracts by agreement. If the parties do not choose, the laws at the habitual residence of the party whose fulfillment of obligations can best reflect the characteristics of this contract or other laws which have the closest relation with this contract shall apply." In the contested agreements, the parties all agree to apply the law of the People's Republic of China to settle the dispute, so in accordance with the law, this Court applies the law of the People's Republic of China as the proper law for this case.

As to whether HOANG KIEU (HUANG Kai) should bear the joint and several guarantee liability: Upon review, the effective Civil Judgment (2019) Ji Min Chu No. 4 has held that RAAS CHINA LIMITED and Shenzhen RAAS Kaiji Investment Consulting Co., Ltd. shall pay Northeast Securities the loan principal, interest, and penalty. It is also held that on April 29, 2016, HOANG KIEU (HUANG Kai) and Shanghai KHKMY, as guarantors, entered into "Guarantee Agreement" number SHLS-LSZG-HK with the creditor Northeast Securities, and that the Agreement is legal and valid. Therefore, this Court confirms the above-mentioned facts. In accordance with the "Supplementary Agreement and Settlement Agreement for the Northeast Securities Co., Ltd. Stock Pledge Repurchase Transaction" (numbered 20170001204(Bu)-6), HOANG KIEU (HUANG Kai) would continue to assume the joint and several guarantee liability for all debts owed by RAAS CHINA LIMITED under the said agreement. Due to this dispute occurring before the implementation of the "Civil Code of the People's Republic of China," the laws prior to the implementation of the "Civil Code of the People's Republic of China" shall be applied. Article 18 of the "Guarantee Law of the People's Republic of China" stipulates that: "A guarantee with joint and several liability is a guarantee whereby the parties agree in a guarantee contract that the guarantor and the debtor are jointly and severally liable for the obligation. If the debtor under a joint and several guarantee fails to fulfill his debt upon the expiration of the term for performance stipulated in the principal contract, the creditor may require the debtor to fulfill his debt or require the guarantor to assume guarantee liability within the scope of guarantee." Article 176 of the "Property Law of the People's Republic of China" stipulates that "where a secured creditor's rights are secured by property and a guarantor, the creditor shall realize creditors' rights pursuant to the agreement when the debtor defaults on its debt obligations or where circumstances stipulated by the parties for the realization of the security interest has occurred; where no agreement exists or the agreement is ambiguous, and the debtor has provided security in the form of property, the creditor shall realize creditors' rights through the property first; where security in the form of property is provided by a third party, the creditor may realize creditors' rights through the property or claim against the guarantor. The third party shall have the right to claim against the debtor upon discharging the guarantee." Article 31 of the "Guarantee Law of the People's Republic of China" stipulates that "after a guarantor has borne his guarantee liability, he shall be entitled to claim repayment from the debtor." In accordance with the above-mentioned laws, and the guarantee agreement, Northeast Securities may demand HOANG KIEU to assume the joint and several liability for the loan principal, interest, and penalty owed by RAAS China. After HOANG KIEU (HUANG Kai) assumes the guarantee liability, he may recourse against RAAS China.

As to the amount of the loan principal, interest, and penalty: Article 21 of the "Interpretation of the Supreme People's Court on Several Issues Concerning Application of the 'Contract Law of the People's Republic of China' (2)" stipulates that: "A debtor shall pay interest and costs in addition to the principal amount of debt. Where his/her payment is not enough to cover all the indebtedness, and the relevant parties have not made any agreement, the People's Courts shall settle the indebtedness in accordance with the following order: (1) the relevant costs of actualizing the indebtedness; (2) interest; (3) principal debt." In this case, Northeast Securities Co., Ltd. has obtained the enforcement proceeds of CNY 535,316,484.70. Therefore, in accordance with the above-mentioned law, the amount ascertained by Civil Judgment (2019) Ji Min Chu No.4, the "Guarantee Agreement," and the "Settlement Agreement," the claim of Northeast Securities Co., Ltd. to demand HOANG KIEU to assume the joint and several guarantee liability for the outstanding loan principal of CNY 269,610,685.70 and interest is appropriate. The interest shall be calculated from September 2, 2023, based on the remaining principal of CNY 269,610,685.70 at a rate of 12.8% per annum, to the date of actual payment. Northeast Securities Co., Ltd. claims that HOANG KIEU should jointly pay the penalties, calculated from the date of default up to October 8, 2019, as CNY 47,250,600. From October 9, 2019, the penalties should be based on CNY 489,000,000 at a daily rate of 0.03%, amounting to CNY 208,754,100 by September 1, 2023. From September 2, 2023, the penalties should be calculated at a rate of 0.03% per day on the principal of CNY 269,610,685.70 to the date of actual payment. This Court supports this claim.

In conclusion, in accordance with Article 8, Article 60, Article 107, Article 114 Clause 1, Article 126, Article 206, and Article 207 of the "Contract Law of the People's Republic of China," Article 176, Article 208, Article 226, and Article 229 of the "Property Law of the People's Republic of China," Article 18 and Article 31 of the "Guarantee Law of the People's Republic of China," Article 21 of the "Interpretation of the Supreme People's Court on Several Issues Concerning Application of the 'Contract Law of the People's Republic of China' (2)," Article 41 of the "Law on the Application of Laws to Foreign-Related Civil Relations of the People's Republic of China," and Article 147 of the "Civil Procedure law of the People's Republic of China," the holding is as follows:

I. Defendant HOANG KIEU (HUANG Kai) shall, within ten days of the effective date of this judgment, jointly and severally with RAAS CHINA LIMITED, pay Northeast Securities Co., Ltd. the remaining loan principal of CNY 269,610,685.70 and interest (calculated from September 2, 2023, based on the remaining principal of CNY 269,610,685.70 at a rate of 12.8% per annum to the date of actual payment).

II. Defendant HOANG KIEU (HUANG Kai) shall, within ten days from the effective date of this judgment, jointly and severally with RAAS CHINA LIMITED, pay Northeast Securities Co., Ltd. the penalties (calculated from the date of default up to October 8, 2019, as CNY 47,250,600; from October 9, 2019, based on CNY 489,000,000 at a daily rate of 0.03%, amounting to CNY 208,754,100 by September 1, 2023; and from September 2, 2023, calculated at a daily rate of 0.03% on the principal of CNY 269,610,685.70 to the date of actual payment).

If any monetary obligation is not fulfilled within the time limit set out in this judgment, the interest on the debt for the delayed performance period shall be doubled in accordance with Article 260 of the "Civil Procedure Law of the People's Republic of China."

HOANG KIEU (HUANG Kai) shall bear the case acceptance fee of CNY 4,747,726.

In case of any disagreement with this judgment, you may, within thirty days after the service of this judgment, submit an appeal to this Court in the same copies as the number of the opposing party to appeal to the High People's Court of Jilin Province.

Presiding Judge: GONG Ping

People's Assessor: ZHENG Tingyuan

People's Assessor: LIU Yang

[Seal of theIntermediate People's Court of Changchun City of Jilin Province]

[verified true copy] November 30, 2023

Clerk: WANG Lianhe

# NOTARIAL CERTIFICATE

(2024) J C G A Z W M Zi, No. 41410

Applicant: Northeast Securities Co., Ltd., United Social Credit Code: 91220000664275090B, Address: No. 6666, Shengtai Avenue, Changchun City

Legal Representative: Li Fuchun, male, born on [redacted] ID Card No.[redacted]

Issue under notarization: Civil Judgment

This is to certify that the foregoing copy of (2022) Ji 01 Min Chu No. 3192 Civil Judgment issued by The Intermediate People's Court of Changchun City of Jilin Province on November 30, 2023 conforms to the original, and that the original document is authentic.

Notary: Gao Xin

Changchun Guoan Notary Public Office

Jilin Province

The People's Republic of China

August 19, 2024

L120719402

# CERTIFICATE OF TRANSLATION

I, Yongjia Johnston, being over the age of eighteen and not a party to the action, duly sworn and deposed, hereby swear and attest to the following:

I am a California court certified Mandarin Chinese interpreter (Certification Number 301304), and Federal court approved interpreter. I am proficient in translating between Chinese (Mandarin) and English. To the best of my knowledge and belief, the attached English translations are true and accurate representation of the original Chinese documents.

List of Documents:
1. Notarial Certificate (2024) J C G A Z W M Zi, No. 41410.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Yong Jia Johnston 2/26/2025

Yongjia Johnston Date

[The notary acknowledgment continues on the following page.]

# CALIFORNIA ALL- PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California }

County of Los Angeles }

On February 26th 2025 before me, David Johnston, Notary Public, (Here insert name and title of the officer)

personally appeared YongJia Johnston,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]

Notary Public Signature (Notary Public Seal)

DAVID JOHNSTON
Notary Public - California
Los Angeles County
Commission # 2378812
My Comm. Expires Oct 17, 2025

## ADDITIONAL OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

Certificate of Translation
(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages _____ Document Date__________

CAPACITY CLAIMED BY THE SIGNER

- [x] Individual (s)
- [ ] Corporate Officer

  ____________ (Title)
- [ ] Partner(s)
- [ ] Attorney-in-Fact
- [ ] Trustee(s)
- [ ] Other ____________

INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - Indicate title or type of attached document, number of pages and date.
  - Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

2015 Version www.NotaryClasses.com 800-873-0865